Pollock, J.
This cause came into this court on appeal and was submitted on the pleadings, the evidence and the arguments of counsel. The only issue before the court arises on the petition of Leota Steel, the answer of the defendant, John Murphy, and the reply of plaintiff thereto.
*151 The plaintiff seeks to compel the defendant, John A. Murphy, to convey to her his undivided one-half interest in the real estate described in the petition, by virtue of a written contract for the sale of this real estate made by and between the plaintiff and this defendant.
An answer was filed which denied the making of the contract and plaintiff’s right to have specific performance.
It appears that on the 28th of February, 1917, Leota Steel went to the home of John Murphy for the purpose of purchasing this lot. At that time she learned that the lot described in the petition was owned by John Murphy and his son, James Murphy. While' talking the matter over John Murphy told her that he would see his son and let her know in a few days in regard to the sale of the lot. On the 9th of March, following, she received a letter enclosing an article of agreement for the sale of this lot. The article of agreement was between John and James Murphy, of the first part, and Leota Steel, of the second part, and provided that the parties of the first part agreed to sell lot number 7 in the village of Merrit, Belmont county, Ohio, to Leota Steel, for the consideration of sixteen hundred dollars; the purchase money to be applied to the payment of a mortgage held by the Buckeye Building and Loan Company and the remainder to be paid to these parties; the first parties to make deed and give possession between the first and tenth of April, 1917; and the second party to send first parties fifty dollars by return mail and receive a receipt for the amount; *152 stating what it w;as for. The contract was signed by John Murphy alone.
The defendant first urged that the contract was not accepted by the defendant, or, in other words, that the parties never entered into the contract. The plaintiff, on receipt of this contract, prepared a contract containing, some different terms from the one received — the difference in the two contracts does not appear from the testimony — sending the new contract by mail to John Murphy, enclosing a 'check for fifty dollars, the cash payment provided for in the first contract.
It is urged that Leota Steel while proposing a different contract could not retain possession of the contract signed by John Murp'hy, and, if he did not 'accept the one sent by her, bind him by accepting his contract. An acceptance of a written offer for the sale of-real estate must be unconditional in order to become binding upon the party offering to sell. A conditional acceptance, or proposing a different contract, is a rejection of the offer. First National Bank v. Hall, 101 U. S., 43; Baker v. Johnson County, 37 Iowa, 186, and Wheaton Bldg. & Lumber Co. v. City of Boston, 204 Mass., 218, 90 N. E. Rep., 598.
If the plaintiff, in answer to the defendant’s offer, sent a contract containing different terms from that' of the offer of the defendant, she could not bind the defendant by accepting his offer without his further consent. But the negotiations in regard to the sale of this property between these two parties did not stop with the receipt by Murphy of the contract prepared by Leota Steel. Murphy *153 collected the check and forwarded to Leota Steel a receipt therefor, reciting that he had received the cash payment on the house and lot at Merrit, near Bellaire, Ohio, enclosing the receipt with a letter stating the reasons why he could not agree to the contract prepared by her.
Some other letters passed from Murphy to Leota Steel before the time of making this deed, and each letter conveys the impression that a contract existed between the parties for the sale of the property.
In the letter which notified Leota Steel • that Tames Murphy would not execute the deed, John Murphy does not deny the existence of a contract, but laments the condition he had got' himself into. We think that he can not deny that after he had refused her proposition he gave his consent to Leota Steel to accept the offer made by him, and can not now deny the existence of this contract between them for the sale of these premises.
After the refusal of James Murphy to perform the conditions of the contract by conveying his interest in the property to the plaintiff, she instituted this action against John Murphy to enforce specific performance of the undivided one-half interest in this property owned by him. It is urged that s'he can not maintain this action for the reason that the remedy of specific performance is not mutual to the parties, and that specific performance is never enforced unless the contract and remedy are mutual; that a court of equity could not decree specific performance of the undivided half of the property in favor of John Murphy, for the reason that the contract provided for the sale *154 of the entire interest, and that if he could not maintain specific performance the plaintiff can not maintain it.
In order to enforce specific performance of a written contract for the sale of real estate the remedy must be mutual.
“A court of equity will never decree performance where the remedy is not mutual, or one party only is bound by the agreement.” Parkhurst v. Van Cortlandt, 1 Johnson’s Ch., 282.
This principle was recognized by the supreme court of this state in Hutcheson v. Heirs of McNutt, 1 Ohio, 14, 20.
But the remedy on the contract as made was mutual. The defendant, John Murphy, if he had been able to produce a deed for the entire property, could have enforced specific performance against the plaintiff had she refused to accept the property, but the question in this case does not depend upon the principle of mutuality of the remedy on the contract, for that existed, but it depends upon the principle of whether, when the title of the vendor to part of the property fails, the vendee can elect to enforce specific performance of the part to which the vendor has title. If the vendor, at the time he entered into the contract for the sale of land to which he has title only to an undivided interest, represented that he had authority from the other tenants. in common to sell the entire estate, and the vendee, relying on that representation, contracted to purchase the entire premises, and the vendor afterwards fails to secure a conveyance from his cotenants, the vendee may enforce specific: *155 performance of the interest owned by the vendor. This principle is recognized in Cochran v. Blout, 161 U. S., 350.
A court of equity will not permit the vendor to take advantage of his own wrong or mistake, but upon the election of the vendee will decree specific performance of the undivided interest owned by the vendor, with an equitable abatement in the purchase price in proportion to the interest not owned by him.
Story’s Equity Juris. (2 Eng. ed.), Section 779, uses the following language in announcing the principle:
“We have thus far principally spoken of cases of actions by the vendor against the purchaser for a specific performance, where the contract has not been, or can not be, strictly complied with. But suits may also be brought by the purchaser for a specific performance under similar circumstances where the vendor is incapable of making a complete title to all the property sold, or where there has been a substantial misdescription of it in important particulars; or where the terms, as to the time and manner of execution, have not been punctually •or reasonably complied with on the part of the vendor. In these and the like cases, as it would be unjust to allow the vendor to take advantage of his own wrong, or default, or misdescription, courts, •of equity allow the purchaser an election to proceed with the purchase pro tanto, or to abandon it .altogether.” .
See also Morss v. Elmendorf, 11 Paige’s Ch., 277; United States v. City of Alexandria et al., 19 Fed. Rep., 609; Jones v. Shackleford, 5 Ky., 410; *156 Tillery v. Land, 136 N. C., 537, 48 S. E. Rep., 824, and Quarg v. Scher, 136 Cal., 406, 69 Pac. Rep., 96.
We think from the facts developed by the testimony in this case that the defendant, John Murphy, represented to the plaintiff, Leota Steel, for the purpose of making this sale, that he had authority from James to sell his interest, and that he was disposing of it in the contract with her. When she visited Murphy on the 28th of February, in regard to the purchase of this property, she claims that he told her in substance that while he had authority to dispose of James’ interest, yet he preferred to wait until he consulted with James, and that after that he would write her. It is true he does not admit this conversation, but we think that the probabilities are the conversation took place; and, then, on the 9th of March, when he sent the contract, he also enclosed with it a letter containing the following:
“We have come to an understanding that you can have the property, so if you mean business I will write a little contract and sign it and you can send me $50.00 to bind the contract, and James and I will make the deed between the first of April and the 10th.”
We think that John Murphy represented to the-plaintiff, Leota Steel, that he had authority to sell this entire property, and, on the ground that James will not convey, can not now refuse to specifically perform the contract so far as he has title to the property.
*157 The decree may be drawn in favor of the plaintiff.

Judgment for plaintiff.

Metcalfe and Farr, JJ., concur.