UNITED STATES of America,

v.

Paul R. THIELEMANN, Appellant.

No. 08–2335.

United States Court of Appeals,
Third Circuit.

Argued May 20, 2009.

Opinion Filed: Aug. 3, 2009.

Larrick B. Stapleton, Esquire (Argued), Ardmore, PA, for Appellant.

Edmond Falgowski, Esquire (Argued), Assistant United States Attorney, Office of the United States Attorney, Wilmington, DE, for Appellee.

Before RENDELL and GARTH, Circuit Judges, and VANASKIE, District Judge.*

## OPINION

GARTH, Circuit Judge:

The defendant, Paul Thielemann, was indicted and pleaded guilty to one count of receiving child pornography. He was sentenced to the statutory maximum of 240 months of imprisonment, plus 10 years of supervised release subject to a number of conditions, including two Special Conditions of Supervision.

Thielemann appeals his prison sentence because the District Court considered non-charged relevant conduct in fashioning his sentence. Thielemann also challenges the two Special Conditions of Supervised Release imposed by the District Court.

---

* The Honorable Thomas I. Vanaskie, United States District Judge for the Middle District of Pennsylvania, sitting by designation.

These conditions restricted Thielemann's computer use and his viewing of sexually explicit material.

We reject Thielemann's arguments concerning his relevant conduct and we conclude that both Special Conditions of Supervised Release must be upheld. In particular, we hold that restricting Thielemann's possession and viewing of sexually explicit material, as defined in 18 U.S.C. § 2256(2)(A), does not violate the Constitution. Accordingly, we will affirm the District Court's judgment and sentence of April 30, 2008.

## I.

On January 19, 2007, Thielemann transmitted child pornography to another internet user through his America Online e-mail. America Online detected the transmission and reported it to the Delaware State Police ("DSP"), who executed a search warrant and seized Thielemann's computer on February 23, 2007. The DSP found several hundred pornographic images of children, as well as computerized logs of online "chats" with Christopher Phillips ("Phillips"),[1] an internet user with whom Thielemann had a sexual relationship.[2]

The transcripts of the online "chats" revealed, among other things, that after boasting about a number of alleged sexual encounters with minors, Thielemann encouraged Phillips to have sex with an eight-year-old victim—a female child whom Phillips could control ("the victim").

Thielemann then sent Phillips a picture of a toddler performing a sexual act on an adult male and claimed the picture depicted him (Thielemann) and a minor over whom Thielemann had control. Thielemann offered to "walk [Phillips] through" these sex acts with the victim.

Later, Thielemann offered Phillips $20 to turn on his web cam and place the victim on Phillips's lap so the victim would see Thielemann's exposed penis. Phillips complied. Thielemann then offered Phillips $100 to rub the victim's genitals and lift up her skirt, which Phillips did. The "chat" transcript implies that Phillips also exposed himself to the victim. Thielemann then asked Phillips to masturbate with the victim on his lap, but it is unclear if Phillips did so.

These saved "chat" files on Thielemann's computer led the police to Phillips, who denied exposing himself to the victim or touching her inappropriately.[3] Thielemann later claimed he did not know the child was on the web cam.

On June 26, 2007, a Grand Jury convened in the United States District Court for the District of Delaware and returned an eighteen-count indictment against Thielemann charging him with the following: Counts One and Two, production of child pornography and conspiracy to produce child pornography in violation of 18 U.S.C. § 2251(a) & (e); Counts Three through Six, receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2) & (b)(1); Counts Seven through Eleven, distribution of child pornography in violation of 18 U.S.C. § 2252A(a)(1) & (b)(1); Count Twelve, possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) &

1. Phillips is a co-defendant who eventually pleaded guilty to distribution of child pornography in violation of 18 U.S.C. § 2252A(a)(1) & (b)(1). He received a 240–month sentence.

2. We reproduce, *infra*, a segment of a "chat" between Thielemann and Phillips on June 11,

2006, as an example of the "chats" that took place between these two men.

3. The victim contradicted Phillips's statement: "During the initial interview, when asked if she ever had to touch a male penis, the 8 year old girl [identified Phillips]." App. 68.

(b)(2); Counts Thirteen through Seventeen, receipt/distribution of obscenity depicting children in violation of 18 U.S.C. §§ 1466A(a)(2)(A) & (B), and 2252A(b)(1); and Count Eighteen, possession of obscenity depicting children in violation of 18 U.S.C. §§ 1466A(b)(2)(A) & (B), and 2252A(b)(2). The offense conduct charged in this indictment occurred between June 16, 2006, and February 23, 2007.[4]

Prior to trial, the Government disclosed copies of the "chat" logs to Thielemann. However, on October 12, 2007, Thielemann moved to compel production of a copy of his computer's entire hard drive. The Government refused to produce it, citing 18 U.S.C. § 3509(m)(2)(A), which provides:

> Notwithstanding Rule 16 of the Federal Rules of Criminal Procedure, a court shall deny, in any criminal proceeding, any request by the defendant to copy, photograph, duplicate, or otherwise reproduce any property or material that constitutes child pornography ..., so long as the Government makes the property or material reasonably available to the defendant.

The Government told Thielemann he would have sufficient access to the computer files.[5]

On January 18, 2008, Thielemann pleaded guilty to a one-count Information charging him with receipt of child pornography (18 U.S.C. § 2252A(a)(2) & (b)(1)). In the Memorandum of Plea Agreement, Thielemann admitted that he engaged in "chats" with Phillips, and that during a "chat," Phillips "had on his lap a minor, visible to the defendant, and at the defendant's encouragement and inducement [Phillips] did simulate masturbation of the minor, and did pose the minor in order to effect the lascivious exhibition of the minor's pubic area." App. 40. Thielemann accordingly suspended his motions to compel production of evidence.

## II.

At sentencing the District Court initially applied U.S. S.G. § 2G2.2, which in this case carried a base offense level of 22.[6] However, the court relied on the "cross-reference" in U.S.S.G. § 2G2.2(c), which directs district courts instead to utilize U.S.S.G. § 2G2.1 if: (1) "the offense involved causing, transporting, permitting, or offering or seeking by notice or advertisement, a minor to engage in sexually explicit conduct for the purpose of produc-

---

4. Thielemann had also engaged in explicit chats with other men during which he discussed having sexual relations with children, and sent and received child pornography. A number of Thielemann's associates were separately indicted and pleaded guilty to various similar charges.

5. Thielemann's counsel complained that he had been denied access to the computer hard drive and files. We are satisfied that the Government's disclosure of the printed copies of the "chats" and its offer to reveal all of the computerized information in the presence of a DSP computer expert satisfied any discovery challenge.

Indeed, after the Government offered access to the hard drive, and Thielemann's counsel met with a DSP official, Thielemann's counsel never requested another meeting or any further access. Moreover, the District Court offered to continue Thielemann's sentencing hearing so that Thielemann's forensic expert could conduct an examination of the computer if Thielemann so desired. Thielemann declined. Additionally, at no point on appeal was the issue of access raised other than in connection with relevant conduct. We conclude that Thielemann's argument has no merit.

6. As noted above, Thielemann pleaded guilty to receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2) & (b)(1). The statutory index of the Sentencing Guidelines (Appendix A) identifies U.S.S.G. § 2G2.2 as the Chapter 2 Offense Guideline applicable to § 2252A.

ing a visual depiction of such conduct," and (2) the resulting offense level is greater than under U.S.S.G. § 2G2.2.

The District Court looked to Thielemann's encouragement of the molestation of the victim and accordingly applied U.S.S.G. § 2G2.1, which carried a base offense level of 32. Thielemann argued that the District Court should not have taken this relevant uncharged conduct into account. However, the cross-reference and related Guidelines provisions and application notes direct the District Court to do so, and the District Court properly considered Thielemann's involvement in the molestation of the victim. *See United States v. Garcia*, 411 F.3d 1173, 1176–78 (10th Cir.2005).

■ Thus, under U.S.S.G. § 2G2.1, the District Court increased Thielemann's base offense level by 10 points and gave him a three-point credit for acceptance of responsibility, leaving the Guidelines sentence in excess of the statutory maximum of 240 months.[7]

The District Court then sentenced Thielemann to the statutory maximum of 240 months and imposed a ten-year term of supervised release, including several Special Conditions, two of which Thielemann challenges on appeal: Thielemann is

prevented from (1) "own[ing] or operat[ing] a personal computer with Internet access in a home or at any other location, including employment, without prior written approval of the Probation Office"; and (2) "possess[ing] or view[ing] any materials, including pictures, photographs, books, writings, drawings or video games depicting and/or describing sexually explicit conduct[8] defined in Title 18 of the United States Code, Section 2256(2)." App. 154–55.

The District Court entered judgment on April 30, 2008, and Thielemann timely appealed. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). The District Court had jurisdiction pursuant to 18 U.S.C. § 3231.

■ We review the substance of Thielemann's sentence for abuse of discretion. *United States v. Wise*, 515 F.3d 207, 218 (3d Cir.2008). We generally review Special Conditions of Supervised Release for abuse of discretion. *United States v. Smith*, 445 F.3d 713, 716 (3d Cir.2006). Our review here is for plain error because Thielemann did not object in the District Court. *United States v. Voelker*, 489 F.3d 139, 143 n. 1 (3d Cir.2007); *United States v. Olano*, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).[9]

---

**7.** We are satisfied that the District Court properly determined Thielemann's offense level. As the Government pointed out: "[t]here is no ambiguity in the Memorandum of Plea Agreement or Sections 1B1.2 and 2G2.2(c)(1). The defendant's rule of lenity argument is without merit. . . ." Gov't Br. 37.

Further, the evidence of the many "chats" and the encouragement of sexual activity with minors clearly established that Thielemann's actions were part of a common plan and course of practice that were relevant to his charged conduct.

**8.** "Sexually explicit conduct," for purposes of this Special Condition, is defined pursuant to the child pornography statute, and includes: "actual or simulated (i) sexual intercourse,

including genital-genital, oral-genital, analgenital, or oral-anal, whether between persons of the same or opposite sex; (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or (v) lascivious exhibition of the genitals or pubic area of any person." 18 U.S.C. § 2256(2)(A).

**9.** Plain error requires that there be an error, that the error be plain, and that the plain error affect substantial rights. *Olano*, 507 U.S. at 732–34, 113 S.Ct. 1770. "Affect substantial rights" generally "means that the error must have been prejudicial: It must have affected the outcome of the district court proceedings." *Id.* at 734, 113 S.Ct. 1770. As we hold in the text, *infra*, we conclude that the District Court did not err.

## III.

 If a sentence "falls within the broad range of possible sentences that can be considered reasonable in light of the § 3553(a) factors, we must affirm." *Wise,* 515 F.3d at 218. "The record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors." *United States v. Cooper,* 437 F.3d 324, 329 (3d Cir.2006). Thielemann argues the District Court did not consider his unique personal circumstances.

 The District Court's analysis under 18 U.S.C. § 3553(a) was informed and adequate. *Cf. United States v. Lessner,* 498 F.3d 185, 203–05 (3d Cir.2007). The court considered the "history and characteristics of the defendant" when it found that Thielemann was not "a victim" but "a predator in his own right" despite having "[a supportive family] [,] a history of being gainfully employed," and no criminal record. App. 151–52. Despite the multitude and content of the "chats" initiated by Thielemann, and his inducing and encouraging pleas to his associates to engage children in their respective sexual activities, the District Court assumed Thielemann was not predisposed to harm children but was, as stated, a predator. App. 151. The court considered "the nature and circumstances of the offense" when it found Thielemann "initiated most of the contact and conversations related to the charges."[10] App. 151.

 The District Court considered "the need to avoid unwarranted sentence disparities" when it noted that it was responsible "for sentencing many of those individuals who were charged" in connection with Thielemann and took "those sentences and those defendants' conduct into account in making sure that the sentencings are consistent." App. 151.[11] Without elaboration, the District Court found that Thielemann's sentence "recognizes the need for punishment, deterrence, protection of the public and rehabilitation for the defendant." App. 152.

 Sentencing courts need not "discuss and make findings as to each of the § 3553(a) factors if the record makes clear the court took the factors into account in sentencing." *Cooper,* 437 F.3d at 329. While the District Court here did not fully discuss all of the § 3553(a) factors, it is clear that the court took them all into consideration.

 Furthermore, the District Court issued a within-Guidelines sentence falling into the range of those considered reasonable. *See United States v. Hoffecker,* 530 F.3d 137, 204 (3d Cir.2008) ("Although we do not deem a within-Guidelines sentence presumptively reasonable, it is 'more likely to be reasonable than one that

---

10. Thielemann erroneously contends that the District Court accused him of being the "ringleader" of a chatroom. Rather, the District Court accurately stated that Thielemann initiated contact with other consumers of child pornography. App. 138, 151.

11. The Government's brief at page 39 recites: Of the defendant's eight associates simultaneously prosecuted in the district court, only Christopher Phillips was sentenced to 240 months incarceration, and that oc-

curred in the week following the defendant's sentencing. PSR 10. Lee Blotzer was sentence[d] to 155 months incarceration on March 10, 2008, for distribution of child pornography. PSR 9. The remaining six defendants were sentenced to between 22 months and 60 months incarceration, with five of the defendants being sentenced for possession of child pornography, which carries a ten year maximum sentence. PSR 11–15.

lies outside the advisory guidelines range.' *Cooper*, 437 F.3d at 331."). The District Court did not abuse its discretion.[12]

## IV.

■ District courts may impose special conditions of supervised release, but such conditions must be "reasonably related to the factors set forth in [§ 3553(a)]" and must "involve[ ] no greater deprivation of liberty than is reasonably necessary" to deter future crime, protect the public, and rehabilitate the defendant. 18 U.S.C. § 3583(d)(1)-(2); *Voelker*, 489 F.3d at 144 (requiring some evidence of a tangible relationship between the terms of supervised release and the offense or the history of the defendant).

On appeal, Thielemann claims that two special conditions (restricting his access to computers and sexually explicit material) were imposed in error. However, Thielemann registered no objection to these conditions in the District Court. We accordingly review for plain error. *See supra* note 9. We hold that the District Court did not err when it required Thielemann to comply with these conditions.

### A. "Sexually Explicit" Material Restriction

District courts generally must make factual findings to justify special terms of supervised release. *Voelker*, 489 F.3d at 144. If a court does not explain its reasons, "we may nevertheless affirm the condition if we can 'ascertain any viable basis for the ... restriction in the record before the District Court ... on our own.'" *Id.* (citation omitted).

■ While the District Court did not specifically explain its rationale in barring Thielemann from sexually explicit materials, the record clearly shows that the District Court's purpose was to rehabilitate Thielemann, to protect children, and to deter future criminal activity.

■ We have held that "District Court[s] could, perfectly consonant with the Constitution, restrict [a defendant's] access to sexually oriented materials" if, like any other restriction, the term had a clear nexus to the goals of supervised release. *United States v. Loy*, 237 F.3d 251, 267 (3d Cir.2001). However, "there are First Amendment implications for a ban that extends to explicit material involving adults."[13] *Voelker*, 489 F.3d at 151. When a ban restricts access to material protected by the First Amendment,[14]

---

**12.** Thielemann also contends that the District Court erred in increasing his sentence based on U.S.S.G. § 2G2.1(b)(6)(B), which provides for a two-point sentencing enhancement when the persuasion, inducement, enticement, coercion, or solicitation of a minor for sexually explicit conduct is achieved by use of a computer. He claims that because nearly all child pornography is transmitted over the internet, this sentence enhancement for computer usage is redundant. Thielemann offers neither facts nor law to support his argument.

Moreover, sentencing courts may disagree with the Guidelines based on policy, *Kimbrough v. United States*, 552 U.S. 85, 128 S.Ct. 558, 570, 575, 169 L.Ed.2d 481 (2007), *Spears v. United States*, —— U.S. ——, ——, 129 S.Ct. 840, 843, 172 L.Ed.2d 596 (2009), but the District Court in this case did not. Because

Thielemann's sentence was otherwise reasonable, no justification exists for reversing the District Court because of its reliance on a currently valid Guideline.

**13.** A ban on sexually explicit material involving children is, of course, reasonable, but unnecessary considering child pornography is already illegal "and the statutorily mandated conditions of supervised release require [defendants] to comply with" child pornography laws. *United States v. Voelker*, 489 F.3d 139, 151 (3d Cir.2007).

**14.** Protected materials include "nonobscene, sexually explicit materials involving persons over the age of 17." *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 72, 115 S.Ct. 464, 130 L.Ed.2d 372 (1994).

courts must balance the § 3553(a) considerations "against the serious First Amendment concerns endemic in such a restriction." *Id.*[15] It is evident that the District Court's restriction in this case would protect children from the predatory conduct of Thielemann and thus could contribute to Thielemann's rehabilitation. Accordingly, the purposes served by the Special Condition far outweigh any Constitutional concerns raised in *Loy* and *Voelker*.

In *Loy*, we rejected a condition which prohibited Loy from possessing pornography. Loy had pleaded guilty to receipt of child pornography. His terms of supervised release included a provision prohibiting him from possessing "all forms of pornography, including legal adult pornography." *Loy*, 237 F.3d at 253. We noted that restrictions on sexual materials were generally permissible because "almost any restriction upon sexually explicit material may well aid in rehabilitation and protection of the public. Only in the exceptional case, where a ban could apply to any art form that employs nudity, will a defendant's exercise of First Amendment rights be unconstitutionally circumscribed or chilled." *Id.* at 266.

However, after discussing the mercurial meaning of the term "pornography," we held that the provision was (1) overly broad and violated the First Amendment because it "might apply to a wide swath of work ranging from serious art to ubiquitous advertising," and that it was (2) unconstitutionally vague because "its breadth is unclear." *Id.* at 267.

Nonetheless, we suggested that "the Constitution would not forbid a more tightly defined restriction on legal, adult pornography, perhaps one that ... borrowed applicable language from the federal statutory definition of child pornography located at 18 U.S.C. § 2256(8)." *Id.* Several years later, the District Court in *Voelker* took heed of our suggestion and handed down just such a reformulated restriction relying on 18 U.S.C. § 2256(2).

In *Voelker*, among other holdings, we overturned a lifetime ban on Voelker's access to sexually explicit material. Voelker had pleaded guilty to possession of child pornography after he was caught briefly exposing his three-year-old daughter's buttocks over web cam, and later admitted to downloading pornographic images of children. *United States v. Voelker*, 489 F.3d 139, 142 (3d Cir.2007). The District Court imposed a lifelong term of supervised release which, *inter alia*, prohibited Voelker from possessing "any materials ... depicting and/or describing sexually explicit conduct as defined at Title 18, United States Code, Section 2256(2)." *Id.* at 143 (And, see the definition of "sexually explicit conduct" at note 8, *supra*).[16] Voelker argued that the condition violated the First Amendment and involved a "greater deprivation of liberty than is reasonably necessary to deter future criminal conduct and protect the public." *Id.* at 150.

We held in *Voelker* that a nexus between the restriction and the goals of supervised release was absent. *Id.* In particular, we explained that "nothing on th[e] record suggests that sexually explicit material involving *only adults* contributed in any way to Voelker's offense, nor is there any reason to believe that viewing such material

---

**15.** We recognize that a term of supervised release restricting access to adult sexually oriented materials must be "narrowly tailored," *i.e.*, that the restriction must result in a benefit to public safety. *United States v. Loy*, 237 F.3d 251, 266 (3d Cir.2001).

**16.** The "sexually explicit" materials condition in *Voelker* is nearly identical to the analogous Special Condition at issue in this appeal.

would cause Voelker to reoffend." *Id.* at 151 (emphasis added).

We do not read our precedents as foreclosing the use of conditions banning access to *sexually explicit* adult materials, particularly when children are victims and are victimized sexually by adults as a means to gratify adult desires. Rather, *Loy* stood for the proposition that a blanket ban on "all forms of pornography" may be constitutionally infirm, but that more limited provisions "borrow[ing] applicable language from the federal statutory definition of child pornography," *Loy,* 237 F.3d at 267, are permissible. Whatever may be the parameters of "pornography," *see id.* at 263–65, the present record transcends the characterization of mere pornography. Here, the record reveals explicit child exploitation and victimization by Thielemann in order to satisfy his sexual appetite for adult men.

Unlike in *Voelker,* there is overwhelming evidence in this record to conclude that Thielemann's exposure to sexual material, albeit involving only adults, will contribute to future offenses by Thielemann. The report of Thielemann's own forensic psychiatrist, Carla Rodgers, M.D., reiterates Thielemann's commingling of adult and child sexual conduct. The report indicates that Thielemann "used [pornographic images of children] in order to seduce heterosexual males into allowing him to perform fellatio on them." App. 119. While Dr. Rodgers concluded that Thielemann's primary interest was in men, and that he was "not at risk of child molestation," the report clearly demonstrates Thielemann's sexual predilections.[17]

Moreover, the "chats" unambiguously reveal that Thielemann's sexual experiences with adults and adult pornography were inextricably linked to his sexual interest in children. Thielemann made no secret of the fact that his desire arose from adult men who are aroused and sexually excited by children. Said Thielemann: "I used [children] to get what I wanted. I wanted to see men turned on to their peak so they could come and do stuff to me." App. 149. Indeed, every one of Thielemann's adult sexual interactions with Phillips involved children.

In order to understand Thielemann's conduct vis-à-vis children and Thielemann's associates, Thielemann's "chats" with Phillips should be read. We reproduce just one small segment of the June 11, 2006 "chat," sickening as it is, to illustrate the manner in which Thielemann used children to obtain his sexual ends. The portion that we recount starts with a summary preamble appearing in the Presentence Report at paragraph 27, and continues with the actual "chat" through paragraph 29. We explain the abbreviations in the margin.[18]

17. The children subjected to Thielemann's sexual predilection may not, in the opinion of Thielemann's psychiatrist, be directly physically harmed by Thielemann, but Dr. Rodgers, at no time, expressed herself about the psychological trauma experienced by these abused children. Can anyone doubt that an eight-year-old victim, abused by Phillips under the direction of Thielemann, will be psychologically scarred at present and during her later years?

18. The following terms appear in the text of the "chat" and require further clarification.

On each line of the "chat" there is a time stamp indicating when each instant message in the "chat" was sent. The words preceding each time stamp are Thielemann's and Phillips's respective computer user names. Thielemann's, "suckingunowinde," stands for "sucking you now in Delaware," a reference to the performance of fellatio on another man. The meaning of Phillips's user name, "cp_2877," is not entirely clear, but "cp" presumably represents his initials (Christopher Phillips), and "2877" may refer to his birth date or some other significant number.

27. On June 11, 2006, Phillips initiated an online chat with Thielemann, who asked Phillips to turn on his web cam so that Thielemann could masturbate while looking at Phillips. Phillips said his web cam was broken and the two men made plans to meet at a McDonald's bathroom. The continuing chat reflects that the two men discussed that Thielemann was going to take a shower during which he would take pictures of himself inserting his fingers into his anus. After an approximate 30 minute interruption in the chat conversation, Thielemann indicated that he was downloading those pictures on his computer and was preparing to send them to Phillips. Thielemann soon said, "next we just got to work on [the victim], just kidding ..." After saying he would have sex with "a young young girl", Thielemann sent to Phillips a picture of an approximate 3 year old girl performing fellatio on an adult male, Thielemann claiming that he and [a minor victim Thielemann could control] were the persons depicted in the image. When asked if he liked the picture, Phillips said, "yeah cool." Thielemann said [the minor victim Thielemann could control] never told anyone about the sexual contact because he was "suttle" [subtle]:

28. suckingunowinde (Sun Jun 11 12:35:25 2006): I am talking likle 10 12 lol

cp_2877 (Sun Jun 11 12:35:30 2006): lol suckingunowinde (Sun Jun 11 12:35:32 2006): even younger lol

cp_2877 (Sun Jun 11 12:35:38 2006): like thats posable suckingunowinde (Sun Jun 11 12:35:52 2006): maybe one day

suckingunowinde (Sun Jun 11 12:35:53 2006): never know

cp_2877 (Sun Jun 11 12:36:00 2006): have you ever suckingunowinde (Sun Jun 11 12:36:07 2006): yes told u that lol

suckingunowinde (Sun Jun 11 12:36:12 2006): never with another guy though

suckingunowinde (Sun Jun 11 12:36:17 2006): but I have by myself

suckingunowinde (Sun Jun 11 12:36:22 2006): even have a picture to prove it lol

cp_2877 (Sun Jun 11 12:36:30 2006): yeah right

suckingunowinde (Sun Jun 11 12:36:38 2006): u want to see

cp_2877 (Sun Jun 11 12:36:43 2006): sure

suckingunowinde (Sun Jun 11 12:37:00 2006): accpet

cp_2877 (Sun Jun 11 12:37:24 2006): cant you sare the pic so I don't have to download it

suckingunowinde (Sun Jun 11 12:37:30 2006): sure

cp_2877 (Sun Jun 11 12:37:38 2006): ok show

suckingunowinde (Sun Jun 11 12:37:45 2006): :) told u

cp_2877 (Sun Jun 11 12:38:05 2006): o my god

suckingunowinde (Sun Jun 11 12:38:13 2006): lol

Several internet slang abbreviations are also used repeatedly throughout the "chat." The term "lol" is an abbreviation for "laughing out loud" or "laugh out loud." The term "ur" is an abbreviation for "your" or "you're." The sole letter "u" is an abbreviation for "you." The term "b4" is an abbreviation for "before." The combination of a colon and closed parenthesis, or:), creates a symbol representing a "smiley face." Any other spelling abnormalities were errors contained in the original "chat" transcript.

cp_2877 (Sun Jun 11 12:38:32 2006): who is that

suckingunowinde (Sun Jun 11 12:38:37 2006): [a minor victim Thielemann could control]

suckingunowinde (Sun Jun 11 12:38:40 2006): u likle it or no

cp_2877 (Sun Jun 11 12:38:50 2006): she didnt tell on you

suckingunowinde (Sun Jun 11 12:39:02 2006): no told u so many times b4

suckingunowinde (Sun Jun 11 12:39:04 2006): no

suckingunowinde (Sun Jun 11 12:39:21 2006): same wa with [the victim] if u do it while there young they will forget all about it and all in like an hour so its all good

suckingunowinde (Sun Jun 11 12:39:25 2006): do u like the picpture of no ? ? ?

cp_2877 (Sun Jun 11 12:39:42 2006): yeah cool

suckingunowinde (Sun Jun 11 12:39:47 2006): ok good

cp_2877 (Sun Jun 11 12:40:01 2006): well [the victim] is 8 and she will tell

suckingunowinde (Sun Jun 11 12:40:27 2006): not if u do it in a suttle way like idid with her

suckingunowinde (Sun Jun 11 12:40:31 2006): I just pulled it out and she went for it

suckingunowinde (Sun Jun 11 12:40:33 2006): lol

cp_2877 (Sun Jun 11 12:40:38 2006): lol

suckingunowinde (Sun Jun 11 12:40:49 2006): but who knows I guess u know [the victim] better than me so

cp_2877 (Sun Jun 11 12:41:10 2006): yes and I wish she wouldnt tell but she will

suckingunowinde (Sun Jun 11 12:42:00 2006): I odubt she will why don't u just try stuff like walking aaround naked or comming out of the shower naked one day and see what she says if she says antuhing then stop if not then like next sit her on ur lap in front of the computer or soomthing and get hard

suckingunowinde (Sun Jun 11 12:42:09 2006): just try little stuff like that at first and see what she says u know

cp_2877 (Sun Jun 11 12:42:47 2006): yeah

suckingunowinde (Sun Jun 11 12:42:56 2006): so do u really like that picture>

cp_2877 (Sun Jun 11 12:43:04 2006): yeaah

suckingunowinde (Sun Jun 11 12:43:10 2006): your not gonna tell on me right

cp_2877 (Sun Jun 11 12:43:19 2006): no

suckingunowinde (Sun Jun 11 12:43:25 2006): ok good

suckingunowinde (Sun Jun 11 12:43:26 2006): :)

cp_2877 (Sun Jun 11 12:43:58 2006): well Im worked up now

suckingunowinde (Sun Jun 11 12:44:06 2006): I am to lol

cp_2877 (Sun Jun 11 12:44:26 2006): lol

suckingunowinde (Sun Jun 11 12:44:36 2006): see if she was there now u could do little stuff just to see what she will say I could walk u threw it lol

suckingunowinde (Sun Jun 11 12:45:08 2006): I have never fucked her

suckingunowinde (Sun Jun 11 12:45:17 2006): I just had her lick my dick and all came in her mouth

cp_2877 (Sun Jun 11 12:45:27 2006): o god don't do that you would be in truble

suckingunowinde (Sun Jun 11 12:45:43 2006): nah did it 4 times alreayd lol

29. On June 11, 2006, via web cam during an online chat Thielemann watched Phillips masturbate.

App. 59–60.

As we held in *Loy*, 237 F.3d at 266, "almost any restriction upon sexually explicit material may well aid in rehabilitation and protection of the public." Here, a reading of the "chats" reveals that restricting Thielemann's access to adult sexually explicit material will undoubtedly aid in rehabilitation and protection of the public.

Given Thielemann's sexual desire for *adult* men who abuse children, banning Thielemann from adult sexually explicit material would be an additional deterrent to Thielemann's sexual arousal and sexual excitement, as it would preclude him from including children in his future sexual experiences.[19] Otherwise, exposure to adult sexually explicit material might very well lead Thielemann to encourage his male associates either to initiate or to continue their abuse of children.

In identifying this nexus between restriction and goals as required by *Voelker*, the Government expressed its fears, which we share. Our approval of the Special Condition which precludes Thielemann from viewing and possessing sexually explicit material was adverted to by the Government at oral argument. We recite the relevant portions of that argument:

> And, so the risk is this: Do we let this man-do we let this man look at adult pornography which presumably is going to exercise his sexual libido? Do we do that knowing that this man's history is through a long period of time, with many men, the defen-

dant intends to gratify that sexual interest in adult men with the currency which is child pornography. And I believe what the District Court did in this case, and indicating that the defendant can not have this sexually explicit conduct, is to guard against the possibility that the public has to be protected to [e]nsure that this will not happen again. Because this is a pervasive problem that this defendant had. It was not an isolated episode. And, the other aspect of this is that the population at risk ... when we say protection of the public, the specific population at risk are the children. So that if the District Court Judge permits the defendant to have access to sexual and explicit material, this sexual explicit material arouses a pattern in the defendant to repeat this behavior. The population at risk, indeed, are children. That's a risk I submit that the Court reasonably did not take.

Tr. of Oral Argument at 14.

We hold that there is a significant nexus between restricting Thielemann from access to adult "sexually explicit" material and the goals of supervised release, and that the restriction here is not overbroad or vague considering the content of the instant record. As such, First Amendment implications are not involved. The balancing protocol required by *Voelker* tilts heavily in favor of protection of the public and children when we consider this record of "inciting to child abuse." We are fully satisfied that the very unusual situation presented in this case thoroughly predominates over the First Amendment concerns raised in *Loy*. Accordingly, the District Court committed no error, let alone plain

---

**19.** Indeed, it is clear that the restriction on "sexually explicit" materials would encompass the activities Thielemann engaged in with Phillips, including explicit web "chats," transmission of homemade pornography, and real-time sexual interactions over web cam.

error, in requiring Thielemann's compliance with this Special Condition of Supervised Release. *See United States v. Voelker*, 489 F.3d 139, 143 n. 1 (3d Cir.2007); *United States v. Olano*, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

### B. Computer Restriction

■ The District Court's rationale for imposing the computer restriction is self-evident. Even a cursory reading of the record (and the reproduced sample of the June 11, 2006 "chat," *supra*) and the evidence acknowledged by Thielemann when he pleaded guilty, reveal that the offenses in this case evolved from the use of a computer and the internet. The District Court clearly and properly imposed the computer condition to deter future crimes via the internet and to protect children.

The issue is whether this restriction was reasonably related to the § 3553(a) factors and "involve[d] no greater deprivation of liberty than is reasonably necessary" to meet those goals. 18 U.S.C. § 3583(d)(1)-(2). An analysis of two of our prior cases is instructive in this regard.

In *United States v. Crandon*, 173 F.3d 122 (3d Cir.1999), the defendant met a teenager on the internet and traveled across state lines to take photos of their sexual encounter. Crandon pleaded guilty to receipt of child pornography and the District Court imposed a three-year ban prohibiting him from using any "computer network, bulletin board, Internet, or exchange format involving computers" without permission from the Probation Office. *Id.* at 125. We upheld the provision because Crandon used the internet to exploit a child, and the restriction would deter him from future crimes and protect the public.

As noted above, in *Voelker*, the defendant challenged a lifelong ban on using computers and the internet consequent to a guilty plea to receipt of child pornogra-phy. We held that the restriction was not narrowly tailored because it was lifelong, contained no exceptions, and ignored the "ubiquitous presence of the internet." 489 F.3d at 144–46. The terms of Thielemann's supervised release are more analogous to those we upheld in *Crandon*. *See also United States v. Paul*, 274 F.3d 155, 167–70 (5th Cir.2001).

Admittedly, "[c]omputers and Internet access have become virtually indispensable in the modern world." *Voelker*, 489 F.3d at 148 n. 8 (citation and quotation marks omitted). However, Thielemann can own or use a *personal* computer as long as it is not connected to the internet; thus he is allowed to use word processing programs and other benign software. Further, he may seek permission from the Probation Office to use the internet during the term of his ten-year restriction, which is a far cry from the unyielding lifetime restriction in *Voelker*.

The parameters of the computer restriction in this case are far less troubling than those in *Voelker*. Moreover, the restriction is not disproportionate when viewed in the context of Thielemann's conduct. Thielemann did more than simply trade child pornography; he utilized internet communication technologies to facilitate, entice, and encourage the real-time molestation of a child.

The restriction on computer and internet use therefore shares a nexus to the goals of deterrence and protection of the public, and does not involve a greater deprivation of liberty than is necessary in this case. There was no plain error.

### V.

For the reasons stated above, we affirm Thielemann's sentence and the two chal-

lenged Special Conditions of Supervised Release.