UNITED STATES of America

v.

Christopher J. PHILLIPS, Appellant.

No. 08–2849.

United States Court of Appeals,
Third Circuit.

Argued March 23, 2009.

Filed: Sept. 21, 2009.

Raymond M. Radulski, Esq., [Argued], Wilmington, DE, for Appellant, Christopher J. Phillips.

Edmond Falgowski, Esq., [Argued], Office of United States Attorney, Wilmington, DE, for Appellee, United States of America.

Before: RENDELL, AMBRO and JORDAN, Circuit Judges.

OPINION OF THE COURT

RENDELL, Circuit Judge.

Christopher Phillips pled guilty to one count of distribution of child pornography, in violation of 18 U.S.C. § 2252A(a)(1). The District Court sentenced him to a within-Guidelines sentence of 240 months' imprisonment and 10 years' supervised release. On appeal, he argues that the District Court did not adequately consider the

sentencing factors in 18 U.S.C. § 3553(a) and that the sentence was greater than necessary to accomplish the statutory sentencing goals. We conclude that the District Court appropriately considered the § 3553(a) factors, and we will affirm the District Court's sentencing order.

Phillips was one of a number of men charged with child pornography offenses after the Delaware State Police executed a search warrant at the residence of Paul Thielemann. A forensic examination of Thielemann's computer revealed transcripts of online chats between Thielemann and Phillips. The two men discussed child pornography and the sexual exploitation of children, and Thielemann suggested that Phillips abuse the 8–year–old victim, a child who was under Phillips's control. The conduct that followed, memorialized in the chat transcripts, led to Phillips's arrest and guilty plea.[1]

At sentencing, the District Court calculated the Guideline range. The base offense level was 32, under section 2G2.1(a) of the Guidelines, because Phillips had distributed child pornography in a way that caused a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of the conduct. The court assessed a four-level increase because the victim was a minor under the age of 12, and a two-level increase because the offense involved sexual contact. An additional two-level increase was applied because the offense involved distribution, and a final two-level increase was applied because the victim was in the custody and care of the defendant. The court reduced the total adjusted offense level of 42 down to 39, because Phillips accepted responsibility. He had no prior criminal record, and therefore a criminal history category of I. The court's Guideline calculations yielded a range of 262–327 months. It recognized that because 20 years was the statutory maximum, the Guideline range became 240 months. Phillips does not challenge the Guideline calculation.

In the sentencing colloquy, the court acknowledged that Phillips had been the victim of childhood sexual abuse and that he had abused the victim only after multiple requests from Thielemann. However, the court noted, the victim was a young child in Phillips's custody and under his control—not "an unidentified child whose exploitation has been multiplied many times over through distribution via the Internet." (App.91.) The court said that it had sentenced the defendants in the related cases, including Thielemann, and that while it recognized individual factors weighing in favor of Phillips, it had no basis to determine which conduct—Phillips's or Thielemann's—was worse. Therefore, after considering the factors in 18 U.S.C. § 3553(a), the court found that a 240–month sentence "recognizes the need for punishment, deterrence, protection of

---

1. On June 16, 2006, Thielemann asked Phillips to turn on his webcam and put the victim on his lap, and Phillips complied. Thielemann offered Phillips money to expose his penis to the victim and to touch her genitals. Phillips accepted the offer, and confirmed that the victim had seen Thielemann's penis on the computer screen via the webcam. Thielemann suggested that Phillips pull up the victim's skirt and rub her chest under her shirt, which Phillips did. When Thielemann asked if Phillips had put his hand down the victim's shorts, Phillips responded that he had. Thiel-

emann then said that he wanted the victim to see him ejaculate, and proposed that Phillips sit the victim on his leg while he masturbated. A few minutes later, Phillips said that he had not enjoyed the encounter and that Thielemann shouldn't worry about giving him anything in exchange.

After he was arrested, Phillips admitted that he had the chats with Thielemann, that he put the victim on his lap, and that it was possible that the victim viewed Thielemann's penis via the webcam. He claimed that when the victim was on his lap, he only touched her leg.

the public and rehabilitation, and certainly is consistent ... with the other sentences handed down for all the other defendants...." (App.92.) [2]

■ We conclude that the District Court reasonably exercised its discretion. The sentence was procedurally reasonable: the District Court properly calculated the Guideline range, considered the § 3553(a) factors, and adequately explained the reasoning behind the sentence. It discussed the history and characteristics of Phillips; the nature and circumstances of the offense; the need for punishment, deterrence, protection of the public, and rehabilitation; the applicable Guideline range; and the need to avoid unwarranted disparities among defendants with similar records who were found guilty of similar conduct. The sentence was within the Guidelines, so the District Court did not need to explain any deviation. *See United States v. Wise,* 515 F.3d 207, 217 (3d Cir.2008) (citing *Gall v. United States,* 552 U.S. 38, 128 S.Ct. 586, 597, 169 L.Ed.2d 445 (2007)).

■ Since the District Court did not err procedurally, we review the substantive reasonableness of the sentence under an abuse of discretion standard, considering the totality of the circumstances. We affirm a sentence as long as it "falls within the broad range of possible sentences that can be considered reasonable in light of the § 3553(a) factors." *Gall,* 128 S.Ct. at 597. A within-Guidelines sentence is more likely to be a reasonable one. *Rita v. United States,* 551 U.S. 338, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007); *United*

*States v. Cooper,* 437 F.3d 324, 331 (3d Cir.2006).

Phillips exploited a young child who was under his care by producing a webcam transmission depicting his sexual contact with her. He did this at the request of Thielemann, who promised him money for the images. Even defense counsel acknowledged that Phillips "bears a heavy responsibility for exploiting the child.... [H]e's ultimately responsible for any damage that it may have caused." (App.85.) While the District Court agreed that Phillips's history and his initial resistance to Thielemann's requests weighed in his favor, the fact that the victim was under his control meant that "I truly don't have any reasoned basis to determine which conduct, yours or that of Mr. Thielemann[ ], is the worst.... I cannot sentence you to anything less than ... Mr. Thielemann, which is the statutory maximum of 240 months." [3] (App.91.)

The court considered the differences between Phillips and Thielemann, and concluded that while their actions may have been different, each man deserved the statutory maximum. Given the facts of the case, the District Court's sentence of 240 months is within the broad range of possible sentences that can be considered reasonable under the § 3553(a) factors. The court made a reasoned and reasonable decision that the sentence was justified, and we will not disturb the sentence.

For the reasons set forth above, we will AFFIRM the Judgment and Commitment Order of the District Court.

---

**2.** Thielemann also received a sentence of 240 months imprisonment, which we have affirmed. *United States v. Thielemann,* 575 F.3d 265 (3d Cir.2009).

**3.** Given that the Guideline range of 262–327 months—which takes into account Phillips's offense characteristics and criminal history—

was well in excess of the sentence imposed on Phillips, we cannot hold, as Judge Ambro urges, that his sentence was substantively unreasonable. Moreover, the District Court's analysis from a procedural standpoint was adequate. We can find no basis for requiring the court to do more than it did in assessing the § 3553(a) factors.

AMBRO, Circuit Judge, Dissenting.

I have significant concerns that the 20–year sentence for Christopher Phillips, the same as that of his more culpable co-defendant, Paul Thielemann, is procedurally and substantively flawed. I thus respectfully dissent.

## I. Facts

The majority opinion sets out the bare facts that led to Phillips's arrest, as well as the facts surrounding his subsequent guilty plea and sentencing. I add the following, which I consider relevant. Phillips had an extremely difficult upbringing, which included being repeatedly molested by his step-father when he was six and seven. According to the psychological evaluation presented by Phillips's attorney, this left him with a desire "to satisfy the needs of another from whom he is desperately wanting acceptance" and an "extreme suggestibility" that makes him susceptible to manipulation. A44. Phillips's sexual relationship with Thielemann began in 2006, during a period of difficulty with his girlfriend, and consisted almost entirely of interaction online (via webcam and web chats). Virtually from the start of their relationship, Thielemann began trying to coax Phillips into including in their sexual activities an eight-year-old girl under Phillips's control.[4]

Initially, Phillips resisted. He stated categorically that he would not do that ("look im not going to do anything with [the] girl so I don't know what to tell u," A17), citing both moral objections ("its not the right thing to do," A16), and fear of the legal consequences ("don't think im going to try anything with her I like my freedome," A18) as the basis for his position. Thielemann persisted. He tried to reassure Phillips by claiming (falsely) that he had had sex with his four-year-old niece multiple times and that each time she had forgotten. Thielemann then sent Phillips a photo of a three-year-old performing fellatio, claiming (again, erroneously) that he was the man in the photo. Phillips continued to be reluctant to go through with Thielemann's suggestion, but, in a June 16, 2006 webcam chat, he relented. That single incident—the details of which are accurately recounted by the Majority[5]—became the sole basis for Phillips's conviction. When the web chat ended, Phillips wrote that "I really hated that but I tell you now I would never do it again." A26.

Police found the chats on Thielemann's computer in February 2007, after America Online detected a child pornography transmission by Thielemann to a third party. They raided Phillips's home in March 2007, but found no child pornography. On January 10, 2008, Phillips pled guilty to transport of child pornography in violation of 18 U.S.C. § 2252A(a)(1). Thielemann, who was a co-defendant with Phillips, pled guilty to the same charge. The District Court sentenced both men to the statutory maximum of 20 years (the minimum was five)[6] even though Thielemann had ex-

4. Because 18 U.S.C. § 3509(d) protects the identity of a child victim of sexual abuse or exploitation, we do not disclose it.

5. I would add just one detail to the description provided in footnote one of the majority opinion—even after Phillips agreed to include the girl in their webcam session, he repeatedly resisted Thielemann's pleas to escalate the encounter. He refused Thielemann's requests that he make the girl perform oral sex on him, touch his penis, or take off her skirt and

seat her in his lap in her panties. A25. He also refused to allow the girl to see Thielemann ejaculate. A26. In addition, I note that, because the webcam images were not saved, we can only infer, based on the chat transcript, what actually happened during the June 16 incident.

6. Although the men pled guilty to trafficking crimes, which carry a base offense level of 22, the District Court followed a cross-reference in the Guidelines for traffickers who cause

changed child pornography with seven friends and condoned it in online chats with them in addition to trying to manipulate Phillips into having sex with a young girl entrusted to his care.

Phillips was not charged with sexual abuse or presenting the live sexual performance of a minor, although these state law crimes describe Phillips's offense better than the federal transmitting of child pornography charge.[7] If he had been charged under state law, Phillips would have faced a very different sentence. Delaware imposes no mandatory minimum sentence for the sort of sexual contact with a minor in which Phillips engaged. 11 Del. C. §§ 1109(5), 4205(b)(2). It requires as little as two years for a live performance conviction. *See* 11 Del. C. §§ 768, 4205(b)(7).

## II. Discussion

In relevant part, 18 U.S.C. § 3553(a) commands the District Court to consider the following factors in sentencing: (1) offense and offender characteristics; (2) the need for a sentence to reflect the basic aims of sentencing, namely (a) "just punishment" (retribution), (b) deterrence, (c) incapacitation, (d) rehabilitation; (4) the Sentencing Guidelines; (5) and the need to avoid unwarranted disparities (uniformity).

*Rita v. United States,* 551 U.S. 338, 347–48, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007). I have, as noted at the outset, significant concerns, both procedural and substantive, with the District Court's application of these factors that lead me to disagree with the District Court and my panel colleagues.

### A. Procedural Reasonableness

#### i. *Omission and Misapplication of Factors*

The District Court did not consider most of the sentencing factors and misapplied one that it did. Before we can affirm a sentence, we must be convinced that the District Court actually gave meaningful consideration to each factor; that it claims to have considered each is not enough. *See United States v. Olhovsky,* 562 F.3d 530, 547 (3d Cir.2009). Here, the District Court stated that it considered all the factors, but the record indicates that it decided its sentence on uniformity and retribution alone. It said to Phillips:

I believe you were the victim of childhood sexual abuse. Mr. Thielemann ... claimed that he was. I do not believe that, but I do believe you were.

I also understand from the record that Thielemann entreated you multiple

---

minors to engage in sexual conduct. Pursuant to the cross-reference, it applied the base offense level of 32 normally used for production crimes. *See* U.S. Sentencing Guidelines § 2G2.2(c)(1). To Phillips, the District Court applied enhancements for a minor under age 12, sexual contact, and supervisory relationship, which, when combined with reductions for his acceptance of responsibility, resulted in an offense level of 37 and a sentencing range of 210 to 262 months. To Thielemann, the District Court applied enhancements for a minor under age 12, sexual contact, distribution, and use of a computer to solicit participation, leading (with the reduction for acceptance of responsibility) to an offense level of 39 and a sentencing range of 262 to 327 months. Because the statutory maximum

was 240 months, the effective ranges were 210 to 240 for Phillips and 240 for Thielemann.

7. The chief element that distinguishes a child pornography offense from other offenses relating to the sexual exploitation of children is that the former creates "a permanent record of the" child's exploitation, such that "the harm to the child is exacerbated by [its] circulation." *New York v. Ferber,* 458 U.S. 747, 759, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982). That element is missing here, as in this case the circulation (via webcam) of the images of the girl's exploitation was simultaneous to the underlying exploitation and no permanent record was ever created.

times before you acquiesced in the conduct. . . .

I have to balance that against the fact that the victim in this case was under your control and was not some unidentified child whose exploitation has been multiplied many times over through distribution via the Internet. And, quite frankly, when I look at all the other co-defendants and when I look at the pre-sentence report and what I have in front of me, I truly don't have any reasoned basis to determine which conduct, yours or that of Mr. Thielemann's, is the worse. And, therefore . . . I cannot sentence you to anything less than that of Mr. Thielemann. . . .

A91. As this (the District Court's entire discussion of the sentencing factors) shows, the Court selected Phillips's sentence by comparing him to Thielemann (and, to a lesser extent, his other co-defendants). It concluded that Phillips's conduct was as bad as Thielemann's because, although Thielemann goaded Phillips into it and (unlike Phillips) did not perform his actions against the backdrop of his own history of childhood sexual abuse, Phillips (unlike Thielemann) exploited someone in his care.

This near-exclusive focus on comparing Phillips to Thielemann was a misapplication of the uniformity factor. Co-defendant comparisons are certainly apt. But we have explained that "Congress's primary goal in enacting [the uniformity factor] was to promote national uniformity in sentencing rather than uniformity among co-defendants in the same case." *United States v. Parker*, 462 F.3d 273, 277 (3d Cir.2006). Going beyond purely local comparisons is especially important in a case like this one, where the facts are atypical for the underlying offense (distribution of child pornography). That uniqueness creates a need for more reference cases in order to be able truly to compare like to like and thus honor uniformity without minimizing the distinctive characteristics of the offender. Yet there is no indication that the District Court made any effort to consider nationwide sentencing. If it had done so, it would have discovered that there is no recent case in which a court sentenced a similar offender to the statutory maximum. A review of recent cases nationwide reveals that courts sentenced a similar offender to 10 years less than Phillips and a worse offender to 20 months less.

In 2007 (the full year preceding Phillips's sentencing), courts nationwide reported only one case to the Sentencing Commission in which a defendant was sentenced under the same statute, Guideline, range, and enhancements as Phillips.[8] Richard Hawes photographed his two-year-old granddaughter engaging in sexually explicit conduct. *See* Government's Objection to Relief Requested in Defendant's Motion for Bail Hearing at 1, *United States v. Hawes*, No. 05–cr–00117–PB–1 (D.N.H. Sept. 26, 2005). The District Court there sentenced him to 10 years less than Phillips. It thought that evidence suggested that Hawes was not a true pedophile, making him a reduced threat to the community, but that he nevertheless had shown a desire to engage in the offensive conduct. *See* Transcript of Sentencing at 11, *id.* (Mar. 21, 2007). If the District Court here had considered that case (the District Court in New Hampshire imposed Hawes' sentence 13 months before the District Court imposed Phillips's),

**8.** I obtained this result from a search of Sentencing Commission databases. *See* Federal Justice Statistics Program: Defendants Sentenced Under the Sentencing Reform Act, 2007, Inter–University Consortium for Political and Social Research, *available at* http://www.icpsr.umich.edu/, Study No. 24232 (and secondary databases referenced therein).

it might have found the disparity in sentences between Phillips and Hawes troubling. The men appear similar, in that the sexual interest of both in children is in question and their offenses were unplanned. But unlike Hawes, Phillips showed no initiative and produced no permanent record of the child's abuse.

Our Court recently affirmed a sentence of 220 months (20 less than Phillips's) under the same statute, Guideline range, and enhancements for a man who videotaped himself violently sexually assaulting his girlfriend's seven-year-old niece. *See United States v. Valenzuela,* 304 Fed. Appx. 986, 988 (3d Cir.2008).[9] If the District Court had considered the sentence in that case (imposed four months before it sentenced Phillips), it might have found the disparity with Phillips's sentence troubling. Unlike Phillips, Valenzuela, who acted on his own initiative, attacked his victim, repeatedly inserting his fingers into her vagina while she cried in pain.

In addition, I find no evidence that the District Court gave meaningful consideration to incapacitation. That factor supports a lesser sentence the lesser the threat posed by the defendant. The chats make clear that Phillips did not initiate the offensive conduct in this instance (and, in fact, that he only engaged in it with some reluctance and that he renounced the act immediately afterward). That would seem relevant to an assessment of the length of sentence required to protect society from Phillips. Yet there is no evidence that the District Court considered Phillips's apparent lack of a predatory disposition in applying this factor.

Finally, the District Court did not appear to give meaningful consideration to rehabilitation. Phillips submitted a psychologist's report that described a condi-

tion of "extreme suggestibility" that appears consistent with Phillips's behavior in the chats. The report described Phillips as crying "freely" and reporting depression, guilt, sleep disturbance, fatigue, and weight loss as a result of confinement. A40. It concluded that "psychoeducational treatment combined with psychotherapy," not imprisonment, will "allow [Phillips] a fuller understanding of the relationship between his victimization and his current charges...." A45. The Court never mentioned the report directly or these conclusions other than noting in passing that Phillips was sexually abused as a child. This is troubling because the report suggests that prison will not cure the condition that led to Phillips's crime.

I would remand to allow the District Court to give more consideration to uniformity, incapacitation, and rehabilitation.

*ii. The District Court's Possible Confusion Over Its Ability to Disagree with Guidelines Policy*

I am further concerned on procedural grounds because the District Court seemed confused about the proper authority to accord the Sentencing Guidelines. Before we can affirm a sentence meted out by a district court, the record must inspire confidence in us that the court knows its powers. *See U.S. v. Hawes,* 523 F.3d 245, 256–57 (3d Cir.2008) (Weis, J., concurring); *United States v. Rodriguez,* 527 F.3d 221 (1st Cir.2008).

Before sentencing Phillips, the District Court said:

> [W]hile I agree, quite frankly, that the sentencing guidelines can be applied in an egregious and unreasonable way with these crimes and I think something should be done about it, I have to look at the way I have sentenced everyone else [associated with Thielemann] in connec-

---

9. I consult this opinion not for its precedential authority but as evidence of past sentencing relevant to consideration of uniformity.

tion with their conduct vis a vis the sentencing guidelines.

A90. After sentencing Phillips, it said, "I certainly believe that there should be a legislative or a higher court than I adjustment [sic] in the sentencing guidelines in this case, but I decline to do that here." A91. We might read these statements to say that the District Court disagrees with the Guidelines in general, but thinks that they are appropriate for Phillips. In that case, there is no procedural defect.

But we can just as easily read the statements to say that the Court did not think that it had complete discretion to vary Phillips's sentence from the Guidelines' calculation. If that is so, there is procedural error because, as the Supreme Court recently reiterated, a District Court may sentence below the Guidelines based solely on a policy disagreement with them. *Spears v. United States,* —— U.S. ——, 129 S.Ct. 840, 843, 172 L.Ed.2d 596 (2009).

The possibility that the District Court was not aware of its power to vary below the Guidelines as a matter of policy is particularly important in the child pornography context. District courts around the country are refusing to follow parts of the child pornography Guidelines because of policy disagreements with them. *See, e.g., United States v. Grober,* 595 F.Supp.2d 382, 390–94 (D.N.J.2008) (Guidelines range: 235 to 293 months—sentence: 60 months); *United States v. Shipley,* 560 F.Supp.2d 739, 744–46 (S.D.Iowa 2008) (Guidelines range: 210 to 240 months—sentence: 90 months); *United States v. Hanson,* 561 F.Supp.2d 1004, 1008–12 (E.D.Wis.2008) (Guidelines range: 210 to 262 months—sentence: 72 months); *United States v. Baird,* 580 F.Supp.2d 889, 894–96 (D.Neb.2008) (Guidelines range: 46 to 57 months—sentence: 24 months).

Courts have good reason for disagreeing with the child pornography Guidelines.

Congress tasked the Sentencing Commission with writing Guidelines that reflect the § 3553(a) sentencing factors based on empirical data on past sentencing and advancements in the knowledge of human behavior, among other things. *See Rita,* 551 U.S. at 347–49, 127 S.Ct. 2456. But starting in the mid–1990s, Congress effectively took control of the child pornography Guidelines away from the Sentencing Commission, increasing Guidelines ranges, and sentences, exponentially between 1996 and 2006. *See* Troy Stabenow, *Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines* (July 3, 2008), at 3–4, 12, *available at* http://www.fd.org/pdf_lib/childpornjulyrevision.pdf (last visited Jul. 29, 2009).

The Guidelines considered by the District Court in sentencing Phillips illustrate this inflation. In 1994, the base offense level for § 2G2.1 (production of child pornography), the Guideline provision under which the District Court sentenced Phillips, was 25. With then-applicable enhancements, Phillips's Sentencing Guidelines range would have been 78 to 97 months, roughly a third of the range applied by the District Court in this case. In 1995, Congress directed the Sentencing Commission to increase the base offense level from 25 to at least 27. *See* Pub.L. 104–71 § 3. The Sentencing Commission raised it to 27; Phillips's Guidelines range (again with then-applicable enhancements) would have been 97 to 121 months, still half of the current range. *See* Guidelines § 2G2.1(a) (1997). In 2004, Congress increased the statutory minimum for production offenses from 10 to 15 years. *See* Pub.L. 108–21 § 103. The Sentencing Commission responded by increasing the base offense level from 27 to the current 32 to "ensure" that the mandatory minimum would be met by the Guidelines in almost every case.[10] Guidelines Supple-

10. In tailoring § 2G2.1 to the statutory mini-

mum for production, the Commission also did

ment to Appendix C at 59 (2006).

The increases do not appear to reflect a belief by the Sentencing Commission that underlying changes in child pornography criminality, empirical data on sentencing, or the state of the art in the behavioral sciences, required a change in the sentencing ranges. But Phillips's Guidelines range jumped by more than 100% to its current level. Given this history, the District Court's characterization of the Guidelines in this case as "egregious" is understandable. I would remand so that the Court may determine whether that egregiousness is reason enough to give Phillips a below-Guidelines sentence.

## B. Substantive Reasonableness

"[T]here are times when a discussion of procedural error will necessarily raise questions about the substantive reasonableness of a sentence." *Olhovsky,* 562 F.3d at 553. In this case, I believe that the District Court's failure to apply all the sentencing factors in light of the Phillips's individual characteristics and circumstances—and, in particular, those circumstances that distinguish him from Thielemann—resulted in a sentence outside the bounds of what could be considered reasonable. *See United States v. Tomko,* 562 F.3d 558, 568 (3d Cir.2009) *(en banc)* (explaining that a sentence is substantively unreasonable only if "no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the [D]istrict [C]ourt provided").

I do not mean to minimize what Phillips did. At oral argument, Phillips's own counsel described Phillips's actions as "horrific." But I believe that to sentence him to the statutory maximum—based on

(1) one incident, that (2) he agreed to engage in only after significant pressure from Thielemann, when (3) he is himself a victim of childhood sexual abuse that (according to at least one psychological evaluation) left him particularly vulnerable to the kind of manipulation that occurred here—displays a failure to perform the kind of finely grained analysis sentencing requires. As we have explained elsewhere, "[t]he hideous nature of an offender's conduct must not drive us to forget that it is not *severe* punishment that promotes respect for the law, it is appropriate punishment.... [U]nduly severe punishment can negatively affect the public's attitude toward the law and toward the criminal justice system." *Olhovsky,* 562 F.3d at 551 (emphasis in original). In my view, casually throwing Phillips into the same boat as Thielemann, a predator who was the hub for all the criminal activity that spawned this case among others, risks doing exactly that.

\* \* \* \* \* \*

For these reasons, I would vacate Phillips's sentence and remand to the District Court for resentencing. Because the majority affirms, I thus respectfully dissent.

---

not take into account defendants, like Phillips, who are subject to that Guideline because of the cross-reference at § 2G2.2(c)(1). The statutory minimum for production does not apply to them.