**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
———

No. 10-3049
———

UNITED STATES OF AMERICA

v.

DERL H. MAURER,
                              Appellant
———

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Criminal No. 10-cr-00060)
District Judge: Hon. Susan D. Wigenton
———

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
March 22, 2011

Before: SMITH, ALDISERT, and VAN ANTWERPEN,
*Circuit Judges*.

(Filed: April 22, 2011)

Kevin F. Carlucci, Esq.
Office of Federal Public Defender
972 Broad Street, 4th Floor
Newark, NJ 07102
        *Counsel for Appellant*

Aaron Mendelsohn, Esq.
Office of United States Attorney
970 Broad Street, Room 700
Newark, NJ 07102

        *Counsel for Appellee*

_____

OPINION OF THE COURT

_____

VAN ANTWERPEN, *Circuit Judge*.

Appellant Derl H. Maurer ("Maurer") pleaded guilty to a single count information charging him with possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). The District Court imposed a sentence of sixty months of imprisonment and a five-year term of supervised release, which included special conditions restricting internet access and association with minors. On appeal, Maurer challenges the procedural reasonableness of his sentence as well as the special conditions of his supervised release. For the reasons that follow, we will affirm.

## I. BACKGROUND

2

Maurer came to the attention of authorities on July 7, 2009, after sending an email via an online social networking website to a fictitious eighteen-year-old teenager, ("Nate"), whose internet profile was created by undercover law enforcement officers to investigate crimes involving sexual exploitation of children. In the email, Maurer solicited the exchange of nude images and asked "Nate" how old he was. The following day, Maurer sent another email again inquiring about nude pictures and reiterating his interest in "young guys too your age and under," and stating "hope your into older men." (Presentence Report ("PSR") ¶ 10.) Three images, which depicted a nude older man exposing himself, were attached to this email. Thereafter, Maurer sent another email directing "Nate" to a website featuring pictures and videos of Maurer performing sexual acts.

In response to a request transmitted by authorities through "Nate," on or about July 13, 2009, Maurer mailed two compact disks ("CDs") to a provided address. The package containing the CDs included a handwritten note from Maurer describing the contents of the CDs, soliciting the trade of additional images, and expressing the desire to "meet and have some good fun together." (*Id.* ¶ 16.) Upon inspection, law enforcement officers confirmed that the CDs contained numerous images and videos of child pornography. Based upon this information, the investigating officers obtained a search warrant to search and seize computers and videos from Maurer's residence.

On July 23, 2009, law enforcement officers executed a search of Maurer's residence pursuant to the warrant. Maurer admitted to authorities that he had sent the CDs to "Nate,"

3

that he had been viewing and collecting child pornography for six months, and that there was additional child pornography on his computer as well as a library of CDs in his bedroom closet. He denied having any sexual contact with minors. In total, law enforcement officers seized from Maurer's residence forty image files and nineteen video files containing child pornography. An examination of these files revealed that several depicted adult males penetrating and otherwise sexually abusing prepubescent children, some of whom were bound with rope and tape. (*Id.* ¶¶ 17, 20, 23.)

On February 2, 2010, Maurer pleaded guilty, pursuant to a written plea agreement, to a one-count information alleging that he possessed child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). At his plea hearing, Maurer admitted that he "knowingly possess[ed] . . . . more than 600 images of child pornography,"[1] some of which depicted "individuals who were clearly minors that had not attained the age of 12 . . . engaging in sexually explicit conduct with other minors and adults." (Joint Appendix ("J.A.") at 36-37.) Maurer additionally admitted that "possession of these images involve[d] the use of a computer." (*Id.* at 36.) These admissions were mirrored in the plea agreement, which also contained a waiver of Maurer's right to appeal the District Court's acceptance of the stipulations contained therein and an acknowledgment that the District Court was not bound by them. (*Id.* at 22, 26.)

---

[1] For purposes of determining the number of images, each video or similar visual depiction is equivalent to 75 images of child pornography. U.S.S.G. § 2G2.2 cmt. n. 4(B)(ii). Maurer admitted to possessing more than 600 images based on the application of this conversion formula.

The District Court held a sentencing hearing on June 28, 2010. According to the PSR prepared by the United States Probation Office, Maurer's total offense level under the Sentencing Guidelines was 28, and his criminal history category was I, yielding an advisory Guidelines range of 78 to 97 months of imprisonment. Notably, the Probation Office found that Maurer's offense involved material that portrayed "sadistic or other violent conduct," and therefore recommended application of a four level enhancement set forth in U.S.S.G. § 2G2.2(b)(4). (PSR ¶ 23.) The Probation Office relied on dictionary definitions of these terms to determine the applicability of this four level enhancement. (*Id.* ¶ 23 n.2.) Although Maurer stipulated to conduct providing the basis for sentencing enhancements relating to his use of a computer and possession of images depicting prepubescent minors, he did not stipulate to possession of images depicting sadistic or violent conduct. Prior to sentencing, Maurer objected to the application of § 2G2.2(b)(4) recommended in the PSR, contending that "the material described in paragraph 23 is [in]sufficient for the enhancement to apply nor does it seem to meet the definitions provided in footnote 2 of the report." (*Id.* Addendum.)

During his sentencing hearing, Maurer presented arguments against the application of § 2G2.2(b)(4) and requested a downward variance based on the factors set forth in 18 U.S.C. § 3553(a). The District Court denied Maurer's objection to the four level enhancement authorized by § 2G2.2(b)(4), stating that "[w]ithout question I think that's an enhancement that is applicable and has been appropriately applied." (J.A. at 67.) The District Court further explained, "I do think that [the enhancement] is appropriately applied . .

5

. because to indicate that children being essentially molested, raped and tortured is not sadistic or somehow masochistic, I think it strains credibility to make that argument. . . . [a]nd this case is certainly no different, given the videos that were involved, the photos that were involved." (*Id*.) The District Court then proceeded to calculate Maurer's total offense level as 28 and his criminal history category as I, yielding a Guidelines sentence range of 78 to 97 months, consistent with the PSR. Upon considering Maurer's arguments pertaining to the sentencing objectives set forth in § 3553(a), the District Court granted a downward variance and sentenced Maurer to sixty months of imprisonment, followed by a five-year term of supervised release.

The District Court included several special conditions as part of Maurer's five-year term of supervised release. Only two are relevant to this appeal: (1) a prohibition on "possess[ing], procur[ing], purchas[ing], or otherwise obtain[ing] access to any form of computer network, bulletin board, Internet, or exchange format involving computers unless specifically approved by the U.S. Probation Office," with disputes regarding applicability "to be decided by the court"; and (2) a prohibition on "having any contact with children of either sex, under the age of 18, without the expressed approval of the U.S. Probation Office . . . [and from] obtain[ing] employment or perform[ing] volunteer work which includes, as part of its job/work description, contact with minor children without the expressed approval of the U.S. Probation Office." (J.A. at 5, 72.) The District Court did not explain the factual basis for imposing these conditions. (*Id*. at 72.) Maurer did not object to the length of his supervised release term or any of the accompanying special conditions specified by the District Court.

6

A timely appeal followed.

## II. JURISDICTION AND STANDARD OF REVIEW

The District Court exercised jurisdiction pursuant to 18 U.S.C. § 3231, and we have jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

We review sentences for both procedural and substantive reasonableness under an abuse of discretion standard. *United States v. Merced*, 603 F.3d 203, 214 (3d Cir. 2010). To this end, "[w]e must first ensure that the district court committed no significant procedural error in arriving at its decision," and if it has not, "we then review the substantive reasonableness of the sentence." *United States v. Wise*, 515 F.3d 207, 217-18 (3d Cir. 2008). Alternatively, where the alleged error pertains to the district court's interpretation of the Guidelines, our review is *de novo*. *See id.* at 217. Our review of the District Court's findings of fact is for clear error. *Id.*

We also review a district court's decision to impose a special condition of supervised release under the abuse of discretion standard. *United States v. Freeman*, 316 F.3d 386, 390 (3d Cir. 2003) (citing *United States v. Crandon*, 173 F.3d 122, 127 (3d Cir. 1999)). Where, however, a defendant fails to object to the conditions imposed at sentencing, the district court's decision is reviewed for plain error. *United States v. Heckman*, 592 F.3d 400, 404 (3d Cir. 2010) (citing *United States v. Evans*, 155 F.3d 245, 248 (3d Cir. 1998)).

## III. DISCUSSION

7

## A. Application of U.S.S.G. § 2G2.2(b)(4)[2]

Maurer contends that the District Court abused its discretion by applying U.S.S.G. § 2G2.2(b)(4) because: (1) the enhancement itself is vague and overly broad, evinced by the fact that the Probation Office had to reference a dictionary to determine whether the enhancement applied; (2) the photographs at issue are not "sadistic" or "violent" according to the ordinary meaning of those terms; and (3) the Government and Probation Office never established that he intended to receive the images or that he derived pleasure from viewing them. Maurer also challenges application of the enhancement by arguing that the District Court failed to give due regard to the written plea agreement. None of these arguments are persuasive.

In our view, § 2G2.2(b)(4) is not vague or overly broad, and it clearly encompasses the images and videos Maurer possessed. Under § 2G2.2(b)(4), "[i]f the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence," a defendant's offense level is increased by four levels. U.S.S.G. § 2G2.2(b)(4). Although the Sentencing Guidelines do not define "sadistic or masochistic conduct" or "depictions of

---

[2]   Section 2G2.2(b)(4) was previously identified within the Guidelines as § 2G2.2(b)(3). The present designation came into effect on November 1, 2004. U.S.S.G. Supp. App. C, amend. 664 (2010). For consistency and clarity, throughout this opinion we have replaced references to subsection "(3)" within quoted excerpts of other opinions with "([4])."

violence," we believe that the ordinary meaning of these terms provides courts with sufficient guidance to ensure that the enhancement is appropriately applied to specific and identifiable conduct.[3] *See Perrin v. United States*, 444 U.S. 37, 42 (1979) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be

---

[3] To date, we have not spoken precedentially on the meaning of "sadistic," "masochistic," and "violent" as used within § 2G2.2(b)(4), or otherwise precisely determined what type of depictions warrant application of the four-level enhancement provided for in this Guidelines provision. In *United States v. Parmelee*, we suggested that images depicting sexual abuse and bondage of children should have compelled a district court to apply the four level enhancement, yet we did not elaborate further on the actual meaning of the terms within § 2G2.2(b)(4) or the general circumstances under which the enhancement should apply. *See* 319 F.3d 583, 585 n.3, 594 (3d Cir. 2003). In *United States v. Miller*, we briefly commented on the meaning of "sadomasochistic" when determining whether a district court had correctly concluded that the appellant's testimony was perjurious. *See* 527 F.3d 54, 59, 76-79 (3d Cir. 2008). Our discussion of the term's meaning, however, was limited to whether it was clear enough to conclude that the defendant knowingly gave false testimony when he denied possessing images fitting this description. *See id.* Finally, in *United States v. Grober*, we generally discussed the enhancements set forth in § 2G2.2(b), including subsection (b)(4), however our ruling neither addressed nor resolved the issues before us in the instant appeal. *See* 624 F.3d 592 (3d Cir. 2010). Our remaining consideration of § 2G2.2(b)(4) and the terms within is limited to non-precedential decisions.

interpreted as taking their ordinary, contemporary, common meaning."); *United States v. Flemming*, 617 F.3d 252, 268 (3d Cir. 2010) (quoting *United States v. Mobley*, 956 F.2d 450, 452 (3d Cir. 1992), for the proposition that "[w]e construe terms of the Guidelines according to their plain meaning" and relying on a dictionary for this purpose). Moreover, other circuits have construed this Guidelines provision according to the ordinary meaning of its terms, and we too are comfortable following this approach. *See, e.g.*, *United States v. Rearden*, 349 F.3d 608, 614-15 (9th Cir. 2003); *United States v. Lyckman*, 235 F.3d 234, 238 (5th Cir. 2000); *United States v. Delmarle*, 99 F.3d 80, 83 (2d Cir. 1996).

Webster's Dictionary defines "sadism" as "the infliction of pain . . . as a means of obtaining sexual release," "delight in physical or mental cruelty," and "excessive cruelty." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (unabridged) 1997-98 (1993). "Masochism," on the other hand, is defined as obtaining "sexual gratification through the acceptance of physical abuse or humiliation." *Id.* at 1388. "Violence" is defined primarily as the "exertion of any physical force so as to injure or abuse." *Id.* at 2554. Although violence, in isolation, can be interpreted broadly, its use here immediately follows the more narrow and specific terms "sadistic or masochistic conduct," and thus we are compelled to construe its meaning narrowly. *See CSX Transp., Inc. v. Alabama Dept. of Revenue*, 131 S. Ct. 1101, 1113 (2011) ("We typically use *ejusdem generis* to ensure that a general word will not render specific words meaningless."); *see also Lyckman*, 235 F.3d at 238 ("[T]he general term 'other depictions of violence' casts its net no wider than necessary to capture images akin to those included

10

by § 2G2.2(b)([4])'s more specific terms."). Thus, we are content that an expansive application of the enhancement is not tenable, and we reject Maurer's contention that § 2G2.2(b)(4) is vague and overly broad.[4]

---

[4] Maurer couches his argument that § 2G2.2(b)(4) is vague and overbroad in general terms, contending simply that these defects render a sentencing court's application of this provision an abuse of discretion. Nowhere in his appellate brief does he claim that these alleged defects render § 2G2.2(b)(4) *unconstitutionally* vague. To the extent that Maurer's argument can be construed as a claim of unconstitutional vagueness, we similarly reject this claim.

Given the clarity of the enhancement when interpreted according to the ordinary meaning of its terms, we are confident that the provision does not fail to give a person of ordinary intelligence fair notice of the conduct to which it applies. *See United States v. Jones*, 979 F.2d 317, 319-20 (3d Cir. 1992) (considering a claim of constitutional vagueness with respect to a specific Guidelines provision and holding that the provision was not unconstitutionally vague in part because it gave fair notice), *superseded by statute on other grounds, as stated in United States v. Roberson*, 194 F.3d 408, 417 (3d Cir. 1999). Similarly, we are confident that the enhancement, as written, does not authorize or encourage arbitrary and discriminatory enforcement. *See United States v. Stevens*, 533 F.3d 218, 249 (3d Cir. 2008) (explaining that a statute may also be unconstitutionally vague if it "authorizes or even encourages arbitrary and discriminatory enforcement." (quoting *Hill v. Colorado*, 530 U.S. 703, 732 (2000))).

Additionally, Maurer cannot show vagueness in light of the facts of his specific case. *See United States v. Mazurie*,

After considering the ordinary meaning of these terms, we join other circuits in holding that the application of § 2G2.2(b)(4) is appropriate where an image depicts sexual activity involving a prepubescent minor that would have caused pain to the minor.[5] We believe that this approach is

419 U.S. 544, 550 (1975) ("It is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in light of the facts of the case at hand."); *Jones*, 979 F.2d at 319-20 (requiring an appellant to show vagueness in light of the facts of his specific case when alleging that a Guidelines provision was unconstitutionally vague). The images at issue here, which, as noted, depicted prepubescent children being bound and sexually penetrated by adults, should have put Maurer on notice that their possession could trigger the four level enhancement in § 2G2.2(b)(4). *See United States v. Rearden*, 349 F.3d 608, 615 (9th Cir. 2003) (finding that "[a] person of reasonable intelligence would figure that a picture of [a male sexually penetrating a child] portrays an adult male's pleasure at the expense of the child's pain.").

[5] *See United States v. Rodgers*, 610 F.3d 975, 978-79 (7th Cir. 2010) ("We have found that § 2G2.2(b)(4) applies to acts likely to cause physical pain.") (internal citation omitted); *United States v. Freeman*, 578 F.3d 142, 146 (2d Cir. 2009) ("[I]f a sentencing court finds that (1) an image depicts sexual activity involving a minor and (2) the depicted activity would have caused pain to the minor, that court need not make any additional findings in order to impose a four-level enhancement under U.S.S.G. § 2G2.2(b)(4)."); *United States v. Belflower*, 390 F.3d 560, 562 (8th Cir. 2004) ("[I]mages involving the sexual penetration of a minor girl by

consistent with the meaning of § 2G2.2(b)(4) and that it provides a sufficiently narrow basis on which sentencing courts may determine whether the enhancement applies. Moreover, in light of our interpretation of § 2G2.2(b)(4), we hold that in order to apply this enhancement, a sentencing court need only find, by a preponderance of the evidence, that an image depicts sexual activity involving a prepubescent minor and that the depicted activity would have caused pain to the minor. *See United States v. Freeman*, 578 F.3d 142, 147-48 (2d Cir. 2009). We agree with other circuits that it is well within the sentencing court's discretion and capacity to make this finding and that nothing more is required to sustain application of the enhancement. *See United States v. Caro*, 309 F.3d 1348, 1352 n.1 (11th Cir. 2002) (collecting cases

---

an adult male and images of an adult male performing anal sex on a minor girl or boy are per se sadistic or violent within the meaning of U.S.S.G. § 2G2.2(b)([4]).”); *Rearden*, 349 F.3d at 616 (“We join these circuits, and hold that the district court did not improperly apply § 2G2.2(b)([4]) after finding that the images depicted subjection of a child to a sexual act that would have to be painful, and thus sadistic.”); *United States v. Bender*, 290 F.3d 1279, 1286 (11th Cir. 2002) (“[A] photograph is sadistic within the meaning of Section 2G2.2(b)([4]) when it depicts the subjection of a young child to a sexual act that would have to be painful.”) (internal quotations and citations omitted)); *Lyckman*, 235 F.3d at 239 (“[I]t was certainly reasonable for the district court to infer that the conduct depicted by the photographs caused the children pain, physical or emotional or both, and therefore constitutes sadism or violence within the meaning of the guideline.”).

13

holding that expert testimony is not required to determine whether depicted conduct is "sadistic"); *Lyckman*, 235 F.3d at 239 ("[I]t was certainly reasonable for the district court to infer that the conduct depicted . . . caused the children pain . . . and therefore constitutes sadism or violence within the meaning of the guideline."); *Delmarle*, 99 F.3d at 83 ("[I]t was within the [sentencing] court's discretion to conclude that the subjection of a young child to a sexual act that would have to be painful is excessively cruel and hence is sadistic within the meaning of § 2G2.2(b)([4]).").

Additionally, contrary to Maurer's claim, there is no need for the sentencing court to determine whether a defendant intended to possess the images or actually derived pleasure from viewing them. Section 2G2.2(b)(4) is applied on the basis of strict liability. *See* U.S.S.G. § 2G2.2(b)(4) Application Note 2 ("Subsection (b)(4) applies if the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence, *regardless of whether the defendant specifically intended* to possess, access with intent to view, receive, or distribute such materials.") (emphasis added); *United States v. Richardson*, 238 F.3d 837, 840 (7th Cir. 2001) ("[L]iability for receiving violent child pornography is strict. Sentencing enhancements generally are imposed on the basis of strict liability rather than of the defendant's intentions or even his lack of care."). Moreover, we agree with the Second Circuit that this factual inquiry is an objective one, and thus, "[a] sentencing court need not determine whether the people depicted in the image are deriving sexual pleasure from the infliction of pain; nor need it gauge whether the viewer of the picture is likely to derive pleasure from the fact that the image displays painful sexual acts." *Freeman*, 578 F.3d at 146. Thus, Maurer's contention

that the District Court needed to establish that he intended to possess or actually derived pleasure from viewing the images at issue here is unavailing.

We also note our belief that the application of § 2G2.2(b)(4) is not limited to circumstances where the pain that would result from the depicted conduct is the result of sexual penetration by an adult or bondage of a child.[6] As the Fifth Circuit observed in *Lyckman*, many of the cases involving the application of this enhancement involve "pornographic images depicting bondage or the insertion of foreign objects into the body canals of a child," but such "images hardly exhaust the malevolent universe of sexual violence against children." *See* 235 F.3d at 238-39. Thus, although we interpret § 2G2.2(b)(4) as applying to a restricted universe of conduct limited by the ordinary meanings of its terms, we do not interpret this provision so narrowly as to

---

[6] This position is consistent with precedent in other circuits. For example, the Seventh Circuit determined that § 2G2.2(b)(4) applies not only to "acts likely to cause physical pain," but also to "sexual gratification which is purposefully degrading and humiliating, [and] conduct which causes mental suffering or psychological or emotional injury in the victim." *Rodgers*, 610 F.3d at 978-79 (internal citations omitted). Similarly, the Eighth Circuit noted that "the terms 'violence' and 'sadism,' as ordinarily used, are not limited to activity involving a rope, belt, whip, chains," and held that § 2G2.2(b)(4) applies more broadly to acts that depicted sexual gratification resulting from a child's pain, irrespective of whether those acts specifically involved bondage or sexual penetration. *See United States v. Parker*, 267 F.3d 839, 847 (2001) (quoting U.S.S.G. § 2G2.2(b)(4)).

15

restrict its application to a subset of sadistic and violent acts of sexual abuse. Sentencing courts are free to apply the enhancement whenever an image depicts sexual activity involving a prepubescent minor that would have caused pain to the minor, regardless of the means through which that pain would result.

Turning now to the facts of Maurer's case, we observe that the District Court applied § 2G2.2(b)(4) based upon a correct interpretation of the enhancement provision and after making the required findings articulated above. The District Court explained, "I do think that [the enhancement] is appropriately applied . . . because to indicate that children being essentially molested, raped and tortured is not sadistic or somehow masochistic, I think it strains credibility to make that argument. . . . [a]nd this case is certainly no different, given the videos that were involved, the photos that were involved." (J.A. at 67.) The images and videos the court referred to included the following depictions: "a prepubescent . . . male . . . anally penetrated by an older male"; "a prepubescent . . . female with her wrist bound to her ankle with duct tape"; and an image of "a prepubescent . . . female, her legs bound above her head with white rope, with an object inserted between her legs." (PSR ¶¶ 17, 23.) Although the District Court did not explicitly state that these sexual acts would cause pain, it is clear from the District Court's references to "rape," "torture," and "children," and its statement that "this case is certainly no different," that it believed the depicted acts would have caused the children pain. Thus, the District Court's decision to apply the four level enhancement under § 2G2.2(b)(4) was supported by the required findings we articulated above—namely, that the images Maurer possessed depicted sexual activity involving a

prepubescent minor that would have caused the child to experience pain.  Moreover, the District Court's conclusion that these acts fit within the meaning of "sadistic" rested on a sound interpretation of the enhancement.  Without dwelling further on the horrid acts depicted within the pictures and videos Maurer possessed, we will simply express our belief that it does indeed "strain[] credibility" to argue that these actions are not "sadistic" within the ordinary meaning of that term.  Accordingly, the District Court did not misinterpret the meaning of the enhancement, commit a procedural error, or otherwise abuse its discretion in applying § 2G2.2(b)(4) based on the facts of Maurer's offense.  Therefore, we hold that the District Court properly applied the four level enhancement.

We also find no merit in Maurer's contention that the court abused its discretion by accepting the plea agreement and then making additional factual findings beyond those factual stipulations provided within it.  The agreement itself explicitly states that "[t]his agreement to stipulate . . . cannot and does not bind the sentencing judge, who may make independent factual findings and may reject any or all of the stipulations entered into by the parties."  (J.A. at 22.)  Moreover, we have previously held that "[a] sentencing court is not bound by factual stipulations in a plea agreement and has discretion to make factual findings based on other relevant information." *United States v. Ketcham*, 80 F.3d 789, 792 n.6 (3d Cir. 1996) (citation omitted).  Nothing in the record indicates, nor does Maurer allege, that the agreement was anything less than knowing and voluntary.  Thus,

17

although the District Court accepted the plea agreement, it was not thereafter limited by it.[7] *See id.*

Finally, the record clearly demonstrates that the District Court meaningfully considered Maurer's sentencing arguments, weighed the sentencing factors set forth in 18 U.S.C. § 3553(a), and sentenced Maurer to a term of imprisonment that was reasonable in light of his offense.

## B. Special Conditions of Supervised Release

Maurer also challenges two of the special conditions imposed by the District Court as part of his five-year term of supervised release. As previously explained, these special conditions prohibited Maurer: (1) from "possess[ing],

---

[7] We note that in the plea agreement, the Government never agreed to recommend a specific Guidelines range, nor did it provide any assurance that it would advocate for a sentence within the range yielded by the factual stipulations set forth in the agreement. Furthermore, the plea agreement explicitly provided: "The sentencing judge may impose any reasonable sentence up to and including the statutory maximum term of imprisonment. . . . This Office cannot and does not make any representation or promise as to what guideline range may be found by the sentencing judge, or as to what sentence Derl H. Maurer ultimately will receive." (J.A. at 20.) In light of this and other provisions, Maurer is hard pressed to argue that the District Court's acceptance of the agreement gave rise to an obligation that it sentence him within a range limited by the factual stipulations set forth therein.

procur[ing], purchas[ing], or otherwise obtain[ing] access to any form of computer network, bulletin board, Internet, or exchange format involving computers unless specifically approved by the U.S. Probation Office," with disputes regarding applicability "to be decided by the court"[8]; and (2) "from having any contact with children of either sex, under the age of 18, without the expressed approval of the U.S. Probation Office . . . [and from] obtain[ing] employment or perform[ing] volunteer work which includes, as part of its job/work description, contact with minor children without the expressed approval of the U.S. Probation Office." (J.A. at 5.) Maurer contends that the limitation on internet use is unduly restrictive given that he neither contacted a minor for sex nor had a prior record of doing so. Maurer similarly argues that the prohibition on contact with minors is unsupported by the facts underlying his offense of conviction and that the condition amounts to an excessive delegation of authority to the Office of Probation. Because Maurer did not object to the District Court's imposition of these special conditions at the sentencing hearing, we review for plain error.[9] *Heckman*, 592 F.3d at 404.

---

[8]    Hereinafter we will refer generally to this condition as a restriction on "internet" use. Notably, the condition at issue here is distinct from and more narrow than a restriction on "computer" use, which would bar a defendant from accessing both computers *and* the internet.

[9]    We use a four-prong analysis to determine whether the district court committed plain error. An appellant must show: (1) an error was committed; (2) the error was plain; (3) the error affected the defendant's substantial rights; and (4) the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Olano*,

Although sentencing judges have broad discretion in fashioning special conditions of supervised release, this discretion is not without limit. *Id.* at 405. Sentencing courts must exercise this discretion within the parameters of 18 U.S.C. § 3583, which requires that any special conditions be "reasonably related" to the factors set forth in 18 U.S.C. § 3553(a).[10] 18 U.S.C. § 3583(a)-(d). Moreover, any such condition must impose "no greater deprivation of liberty than is reasonably necessary" to deter future criminal conduct, protect the public, and rehabilitate the defendant. 18 U.S.C. § 3583(d)(2); *see United States v. Pruden*, 398 F.3d 241, 248-49 (3d Cir. 2005) (noting that the considerations included in § 3583 by the incorporation of § 3553(a) "are fairly broad, but

---

507 U.S. 725, 732-34 (1993). "A plainly erroneous condition of supervised release will inevitably affect substantial rights, as a defendant who fails to meet that condition will be subject to further incarceration." *United States v. Pruden*, 398 F.3d 241, 251 (3d Cir. 2005). Moreover, imposing a sentence not authorized by law "seriously affects the fairness, integrity, and reputation of the proceedings." *Id*. Thus, if we find that the District Court plainly erred in imposing this supervised release condition, we must vacate the condition.

[10] Those factors include: "(1) the nature and circumstances of the offense and the history and characteristics of the defendant; [and] (2) the need for the sentence imposed . . . (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a).

they do impose a real restriction on the district court's freedom to impose conditions on supervised release.").[11]

### B.1. Special Condition Restricting Internet Access

We have previously identified several key considerations when addressing challenges to special conditions restricting internet and computer use. In *United States v. Heckman*, we explained that "three factors [] have guided our prior holdings in this area: (1) the *length* and (2)

---

[11] We also observe that, "courts of appeals have consistently required district courts to set forth factual findings to justify special probation conditions," *United States v. Warren*, 186 F.3d 358, 366 (3d Cir. 1999); however, "[w]here a sentencing court fails to adequately explain its reasons for imposing a condition of supervised release or the condition's relationship to the applicable sentencing factors, we may nevertheless affirm the condition if we can 'ascertain any viable basis for the . . . restriction in the record before the District Court . . . on our own.'" *United States v. Voelker*, 489 F.3d 139, 144 (3d Cir. 2007) (quoting *Warren*, 186 F.3d at 367). Although Maurer does not discuss this requirement in his appellate brief, our independent review of the record reveals that the District Court failed to explain the factual underpinnings of the special conditions it imposed. We do not believe that this defect requires that we vacate these conditions, however, as we are able to identify a viable basis for their imposition. *See Voelker*, 489 F.3d at 144. The nature of Maurer's computer use, the character and size of his child pornography collection, and his stated sexual interest in minors provide ample grounds for imposition of these special conditions.

*coverage* of the imposed ban; and, (3) the defendant's underlying *conduct*." 592 F.3d at 405. Consistent with this approach, in *United States v. Miller*, we explained: "First, we must examine the scope of the supervised release condition, including both its duration and its substantive breadth—here, the degree to which access to computers and the internet is restricted. . . . Second, we must consider the severity of the defendant's criminal conduct and the facts underlying the conviction, with a particular focus on whether the defendant used a computer or the internet to solicit or otherwise personally endanger children." 594 F.3d 172, 187 (3d Cir. 2010). Although these factors provide a helpful framework for analyzing the challenge presented here, we remain cognizant of the reality that "this is an area of law that requires a fact-specific analysis." *See Heckman*, 592 F.3d at 405.

Maurer argues that the circumstances of his offense, when considered in light of the factors highlighted above and compared to other cases in our circuit dealing with similar challenges, require that we vacate the special condition restricting his use of the internet. In support of this position, Maurer places considerable emphasis on the fact that his use of the internet did not involve sexual exploitation of an individual who was actually a minor. Indeed, as noted above, the presence or absence of such conduct has been an important factor in previous decisions of this Court wherein we considered the reasonableness of restrictions on internet and computer use. *See Miller*, 594 F.3d at 187. For example, in *United States v. Crandon*, we upheld a three-year ban on internet use because the defendant "used the Internet as a means to develop an illegal sexual relationship with a young girl." 173 F.3d 122, 125, 127 (3d Cir. 1999). Similarly, in

22

*United States v. Thielemann*, we upheld a computer restriction where a defendant, in addition to possessing child pornography, encouraged another person through an online "chat" to have sexual contact with a young girl. 575 F.3d 265, 278-79 (3d Cir. 2009). In contrast, in *United States v. Voelker*, we struck down a lifetime ban on computer use given its "extraordinary breadth" and because the defendant "did not use his computer equipment to seek out minors nor did he attempt to set up any meetings with minors over the internet." 489 F.3d at 144, 146. Thus, Maurer is correct that in addition to considering the length and breadth of such restrictions, our analysis looks to whether or not the defendant used the computer and internet to engage in predatory behavior.

Contrary to Maurer's position, however, our consideration of this factor as well as its underlying concerns actually militate in favor of upholding the restriction on his use of the internet. Although Maurer did not in this particular instance use the internet to exploit a person that was actually a minor, his use of the internet nonetheless triggers concerns of predation that we believe are sufficient to sustain the restriction at issue here. While "Nate" was, insofar as Maurer knew, eighteen years old and therefore not a minor, Maurer explicitly stated via an internet message that he was interested in "young guys too your age *and under*." (PSR ¶ 10 (emphasis added).) Moreover, Maurer was clearly willing to use the internet to facilitate a sexual encounter. He directed "Nate" to a website featuring images of himself engaging in sexual acts and later expressed a desire "to meet and have some good fun together." (*Id.* ¶ 16.) These facts, when viewed together, demonstrate that Maurer's use of the internet went beyond simply obtaining child pornography. Maurer's

23

expressed interest in minors, when coupled with his demonstrated willingness to use the internet as a means for arranging sexual encounters, presents a tangible risk to children.  This risk exists notwithstanding the fact that "Nate" was eighteen years old insofar as Maurer knew at the time.  Thus, although Maurer did not actually use the internet to seek out a minor in this particular instance, we believe that the unique facts of his offense trigger the very concerns that animated our consideration of the solicitation and predation concerns highlighted in *Miller*.  *See* 594 F.3d at 187.

We also believe that the duration and scope of the restriction on internet use are reasonable.  While there is no precise formula for determining what constitutes a reasonable length of time, five years falls comfortably within the range of time periods we have previously upheld.  *See, e.g.*, *Thielemann*, 575 F.3d at 270, 278 (upholding a special condition lasting for ten years); *Crandon*, 173 F.3d at 125, 127-28 (upholding a special condition lasting for three years).  Although Maurer is an older man, his age was not an obstacle to committing the instant offense, and we do not believe his age renders a five-year restriction excessive.  The scope of the restriction is also sufficiently narrow.  Rather than restricting all computer use, the District Court limited only Maurer's access to the internet, with exceptions to be provided by the Probation Office.  Once released, Maurer may still use a computer for daily tasks.  Thus, this restriction does not amount to "cybernetic banishment," as did the condition in *Voelker*, 489 F.3d at 148, and it is more akin to the sufficiently narrow internet-only conditions we affirmed in

*Crandon* and *Theilemann*.[12]  *See* 575 F.3d 278-79; 173 F.3d at 127-128.  Furthermore, the District Court expressly stated at sentencing that disputes regarding the applicability of the restrictions would be "decided by the court." (J.A. at 72.)

The restriction on internet use therefore shares a nexus to the goals of deterrence and protection of the public and does not involve a greater deprivation of liberty than is necessary in this case.  Accordingly, the District Court did not plainly err in imposing this condition.

### B.2.  Special Condition Restricting Association with Minors

We also reject Maurer's contention that the restriction on contact with minors is overly broad and amounts to an excessive delegation of authority to the Office of Probation.  As discussed above, in the course of a conversation with "Nate" wherein Maurer ultimately suggested meeting for a

---

[12]  Our explanation in *Thielemann* is equally applicable here.  Therein, we acknowledged that "[c]omputers and Internet access have become virtually indispensable in the modern world."  575 F.3d at 278 (citation and quotation marks omitted).  Nonetheless, we found the restriction on internet use appropriate given the fact that the defendant could "own or use a personal computer as long as it is not connected to the internet; thus he is allowed to use word processing programs and other benign software.  Further, he may seek permission from the Probation Office to use the internet during the term of his ten-year restriction, which is a far cry from the unyielding lifetime restriction in *Voelker*." *Id*.

sexual encounter, Maurer stated that he had a sexual interest in minors. Moreover, his substantial collection of child pornography contained a number of images that depicted sadistic and violent sexual abuse of prepubescent children. These facts, taken together, suggest that Maurer is a risk to children, and therefore the District Court did not plainly err in restricting his contact with minors, regardless of the fact that he was convicted only for possession of child pornography. *See United States v. Loy*, 237 F.3d 251, 254, 268 (3d Cir. 2001) (upholding a special condition restricting contact with minors where defendant was convicted solely of possessing child pornography, but where other facts in the record indicated that defendant was a danger to children). Given the risk Maurer presents, we believe that this special condition shares a nexus to the goals of deterrence and protection of the public and does not involve a greater deprivation of liberty than is necessary in this case.

Finally, we do not believe that this restriction, which permits the Probation Office to approve exceptions, amounts to an excessive delegation of authority. "Probation officers have broad statutory authority to advise and supervise probationers, and to 'perform any other duty that the court may designate.'" *Pruden*, 398 F.3d at 250 (citing 18 U.S.C. § 3603(10)). However, because probation officers are nonjudicial officers, they may not "decide the nature or extent of the punishment imposed upon a probationer." *Id.* (citation omitted). We think that the special condition restricting Maurer's contact with children delegates authority to probation that is in accord with the Probation Office's ministerial role.

Maurer points us to our decisions in *Heckman* and *Voelker* in arguing that the condition restricting his contact with minors is an improper delegation of authority. Both of these cases, however, are distinguishable. In *Heckman*, we vacated a condition of supervised release which required the defendant to "follow the directions of the United States Probation Office regarding any contact with children of either sex under the age of 18." 592 F.3d at 411. We interpreted this condition as delegating complete discretion over Heckman's contact with minors to the Probation Office and therefore concluded that the condition was improper. *Id.* In contrast, the condition at issue here sufficiently defines the contours of the prohibition, as it specifically prohibits "*any contact* with children of either sex, under the age of 18,*" rather than leaving to probation the primary determination of which children, if any, Maurer may associate with. (J.A. at 5 (emphasis added).) The fact that Probation may nonetheless determine exceptions does not amount to an impermissible delegation, as the nature and extent of the punishment remains predetermined by the District Court.

In *Voelker*, we vacated as an "unbridled delegation of authority" a condition with specific terms that more closely resemble the terms of the condition imposed in Maurer's case.[13] 489 F.3d at 154. Maurer contends that our holding in *Voelker* compels the same outcome here. We disagree. Our decision in *Voelker* was driven by two critical facts that are

---

[13] The condition in *Voelker* read as follows: "The defendant shall not associate with children under the age of 18 except in the presence of a responsible adult who is aware of the defendant's background and current offense and who has been approved by the probation officer." 489 F.3d at 143.

not present in the case before us. First, Voelker had two young children. *Id.* at 153. Second, the special condition barring contact with minors was of lifetime duration. *Id.* at 146. Thus, by imposing a general prohibition with exceptions to be provided by probation, the sentencing court delegated to Voelker's probation officer the "sole authority for deciding if [he] will ever have unsupervised contact with any minor, including his own children, for the rest of his life." *Id*. at 154. Moreover, the record in Voelker's case prevented us from supplying a presumption that the condition would not apply to Voelker's own children. *Id*.

Whereas the condition at issue in *Voelker* infringed upon the relationship with the defendant's own children, Maurer's condition is of more limited effect given his age and circumstances. Each of Maurer's children is an adult. Thus, the restriction on association with minors does not trigger the concern that animated our determination in *Voelker*. Moreover, whereas the condition in *Voelker* was of lifetime duration, the condition at issue here lasts only five years. Absent the unique concerns present in *Voelker*, we do not find that the condition restricting Maurer's association with children amounts to an excessive delegation of authority.

## IV. CONCLUSION

For the reasons stated above, we will affirm Maurer's sentence and the two challenged special conditions of supervised release.