**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-4242
_____

UNITED STATES OF AMERICA

v.

JACK UNDERWOOD,
Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Criminal No. 1-09-cr-00471-001)
District Judge: Honorable Renee M. Bumb
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 27, 2012

Before:  McKEE, *Chief Judge,* JORDAN AND VANAKSIE, *Circuit Judges*

(Filed: December 19, 2012)
_____

OPINION
_____

VANASKIE, *Circuit Judge.*

Jack Underwood pled guilty to knowing possession of material containing child

pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B).  He received a below-

guidelines prison term of 54 months and a supervised release term of life.  The conditions

of supervised release included a five year restriction on use of computers.  Underwood

appeals, arguing that the District Court erred in declining to grant a greater downward variance to avoid unwarranted sentencing disparities under 18 U.S.C. § 3553(a)(6), in imposing a lifetime term of supervision, and in establishing what he characterizes as a five-year ban on use of the internet. We reject Underwood's arguments, and will affirm the District Court's judgment.

## I.

We write primarily for the parties, who are familiar with the facts and procedural history of this case. Accordingly, we set forth only those facts necessary to our analysis.

In August of 2007, as part of a joint local, county, state, and federal investigation, the New Jersey Police Internet Crimes Against Children Task Force searched file sharing networks for terms associated with child pornography. On one network, investigators discovered "several files indicative of child rape." (PSR 14-15). The IP address associated with those files was registered to Ronald Ross. On October 1, 2007, law enforcement officers executed a search warrant at Ross' residence. Ross, a convicted sex offender, was permitting Underwood to reside in his home at the time the search warrant was executed. Underwood admitted that he searched the internet for child pornography and had downloaded material onto his computer. Law enforcement officers searched Underwood's computer and found 20 videos containing child pornography. One of the videos ran 50 minutes in length, depicting an instructional video on how to groom a child to be sexually abused.

Underwood eventually was charged in a one-count indictment with possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B). He pled guilty on May

2

12, 2010.  In a sentencing memorandum, Underwood  requested a sentence of 18 months'

imprisonment.  Underwood argued for this substantial downward variance from his

advisory guidelines range of 78 to 97 months based on his difficult childhood. He also

sought a downward variance based upon the relatively short prison terms received by

others who were apprehended as a result of the task force investigation and prosecuted

for state child pornography crimes.[1]  In response, the Government requested a within

Guidelines sentence.

Underwood's initial sentencing hearing commenced on March 8, 2011.

Underwood acknowledged that the advisory guidelines imprisonment range was correctly

set at 78 to 97 months, and pursued his request for a substantial downward variance.  The

initial sentencing hearing was adjourned to allow Underwood to gather and present the

sentencing court with additional information on his sentencing disparity argument.

On September 15, 2001, Underwood submitted supplemental materials to the

Court, but they contained no additional information in support of his sentencing disparity

argument.  On November 17, 2011, the sentencing hearing re-commenced.  Underwood

requested a below guidelines sentence of 30 months based on his extraordinarily difficult

childhood and the need to avoid unwarranted sentencing disparities.

On November 17, 2011, the District Court sentenced Underwood to 54 months'

imprisonment, followed by a lifetime term of supervised release, and a five-year

---

[1] Underwood also sought a downward variance by attacking the Guidelines provision applicable to possession of child pornography, U.S.S.G. § 2G2.2.  The District Court declined to reduce Underwood's sentence on this ground, explaining that it had no policy disagreement with the child pornography guidelines.  Underwood has not pursued this argument on appeal.

computer-use restriction. Although finding that Underwood's personal history and characteristics justified a sentence below the guideline range, the District Court concluded that Underwood had not satisfied his burden of showing he was similarly situated to others charged as a result of the Task Force investigation, and denied his request for a downward variance on the grounds of unwarranted sentencing disparities. The District Court also extensively discussed the duration and conditions of Underwood's supervised release. The District Court explained that the lifetime term and five-year restriction on computer use were reasonable based on (1) Underwood's possession of the graphic tutorial video; (2) the progression of his initial interest in adult pornography available on the internet to an interest in child pornography; (3) the absence of a family or social support network; (4) his disrespect for the law while on pretrial release; and (5) his need for treatment as evidenced by his forensic evaluation. The District Court did note, though, that Underwood would be permitted to seek an amendment to, or termination of, his supervised release term in the future.

## II.

The District Court had jurisdiction under 18 U.S.C. § 3231, and we have appellate jurisdiction under 28 U.S.C. § 1291.

## A.

Underwood does not challenge the calculation of his advisory guidelines range of 78 to 97 months' imprisonment. What he does challenge is the extent of the District Court's downward variance. In this regard, he contends that the District Court failed to give meaningful consideration to the sentencing factor set forth in 18 U.S.C. §

4

3553(a)(6), asserting that the District Court erred procedurally by rejecting his request for a downward variance to avoid unwarranted sentencing disparities between himself and the other defendants apprehended and sentenced as a result of the child pornography task force investigation.[2]

The Sentencing Court must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). The defendant bears the burden of establishing that he is similarly situated to those other defendants "in terms of the extent of the crime, charges, prior history, and jurisdiction." *United States v. Robinson,* 603 F.3d 230, 234-235 (3d Cir. 2010).

In an effort to satisfy his "similarly situated" burden, Underwood provided the District Court with generalized information about the age and sentence of the other forty-three individuals arrested in connection with the investigation. Of the younger persons arrested, five were juveniles, one was 18-years-old, and five (including Underwood) were 19-years-old. Only two of the five young adults prosecuted in state court received prison sentences, each receiving sentences of three-years but actually serving on average 12 months. Underwood was the only one of this group of young offenders prosecuted federally. Among the adult defendants, only two were prosecuted federally, each receiving 51-month sentences.

---

[2] The Sentencing Court must consider the recommended guidelines range together with the statutory factors listed in 18 U.S.C. § 3553(a). *United States v. Booker,* 543 U.S. 220, 258-59 (2005). This Court will review the Sentencing Court's consideration of the § 3553(a) factors for abuse of discretion. *Gall v. United States,* 552 U.S. 38, 51 (2007).

Underwood relies heavily on *United States v. Arrelucea-Zamudio,* 581 F.3d 142 (3d. Cir. 2009). Arrelucea-Zamudio pled guilty to illegal reentry into the United States, in violation of 8 U.S.C. § 1326(a) and (b)(2). The District Court sentenced him to 48 months' imprisonment. On appeal, Arrelucea-Zamudio argued that he should receive a downward variance because of the sentencing disparity between immigration defendants in fast-track districts and non-fast-track districts. The Court in *Arrelucea-Zumudio* held, in the context of sentencing disparities created by the existence of fast track and non-fast track jurisdictions, that a defendant need not match himself to a specific defendant in exactly the same circumstance as himself to warrant a downward variance.

Underwood emphasizes that showing other defendants possessed the same materials as he did was unreasonable, because he had "no practical way of knowing or showing what another defendant had downloaded or possessed." (Appellant Br. at 20.) In particular, he highlights that the disclosure of images in child pornography prosecutions is tightly regulated under the Adam Walsh Child Protection and Safety Act of 2008, 19 U.S.C. § 3509(m), so a federal defendant cannot obtain the images from another defendant's prosecution. Accordingly, argues Underwood, it is virtually impossible to show similarity in circumstances when the focus of the sentencing judge is on the nature of the child pornography in the possession of the person being sentenced. Underwood also contends that the District Court ignored the obvious similarities between himself and the other offenders in denying a variance. Underwood argues that, because the operation specifically targeted offenders using peer-to-peer file sharing sites to

6

download and provide child pornography, the similarities are clear and he did not need to show that the other offenders engaged in identical conduct.

Initially, it must be noted that Underwood has not presented any evidence that suggests that he sought to obtain information about the nature of the child pornography possessed by others who were prosecuted as a result of the task force's investigation. While it may be impossible to obtain access to the images and videos, Underwood has not shown that he was unable to secure narrative descriptions of the materials. In particular, he has not shown that he sought to learn whether any of the comparators possessed the highly offensive tutorial video. Moreover, when additional and more specific information was requested by the District Court, Underwood failed to provide it. Specifically, Underwood failed to show that any of the other individuals possessed the instructional video for training child abusers or other sadistic or violent images such as those found on his computer. Therefore, Underwood failed to establish that he was similarly situated to the other defendants prosecuted as part of the task force investigation.

Even assuming that he sought but was unable to obtain information that others possessed equally outrageous materials, Underwood relied upon a universe of comparators who, by definition, are not similarly situated to him because they were not prosecuted federally. "Congress's primary goal in enacting § 3553(a)(6) was to promote national uniformity in sentencing rather than uniformity among co-defendants in the same case." *United States v. Parker,* 462 F.3d 273, 277 (3d Cir 2006). The "'sole concern' of §3553(a)(6) remains disparities among sentences of federal defendants," not

disparities between state and federal defendants. *United States v. Begin,* 696 F.3d 405, 412 (3d Cir. 2012). The fact that states may enforce their criminal sentencing schemes in dissimilar fashions has no effect on the federal sentencing guidelines and § 3553(a) factors. In fact, "[a]djusting federal sentences to conform to those imposed by the states where the offenses occurred would not serve the purposes of § 3553(a)(6), but, rather, would create disparities within the federal system, which is what § 3553(a)(6) is designed to discourage." *Begin,* 696 F.3d at 412 (*citing United States v. Branson,* 463 F.3d 1110, 1112 (10th Cir. 2006)). State court defendants, therefore, are not proper comparators for sentencing disparities in the federal system, and Underwood's reliance upon sentences imposed by the state court is unavailing.

The two remaining defendants, prosecuted federally, received sentences of 51 months' imprisonment. Underwood was sentenced to 54 months' imprisonment. A three-month difference in prison terms is insufficient to establish an unwarranted sentencing disparity among federal defendants.

The District Court extensively assessed the § 3553(a) factors in the context of the facts of this case prior to imposing a sentence that was twenty-four months below the minimum term in the advisory guidelines range. The District Court considered Underwood's troubling upbringing, the disturbing nature of the materials found on Underwood's computer, the amount of material found on his computer, his disrespect for the law and the court while on pretrial release, the tremendous harm to the victims evidenced in the Victim Impact Statements, and the need to protect both society and

Underwood from the possibility of recidivism. We discern no error, procedural or substantive, in the decision to sentence Underwood to prison for four and a half years.

B.

Underwood next argues that the District Court erred by imposing a lifetime term of supervised release and a five-year internet restriction. Underwood did not object in the District Court to either the duration or the conditions of supervised release. Where a defendant fails to raise a claim of error in the District Court, we will review for plain error. *United States v. Maurer*, 639 F.3d 72, 82 n. 9 (3d Cir. 2011). We employ a four-prong test to determine whether the District Court committed plain error. *Id.* The appellant must show "(1) that an error was committed; (2) the error was plain; (3) the error affected the defendant's substantial rights; and (4) the error 'seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" *Id.* (quoting *United States v. Olano,* 507 U.S. 725, 732-34)(1993)). Even if those requirements are satisfied, this Court may deny a remedy. *United States v. Tyson,* 653 F.3d 192, 211 (3d Cir. 2011).

The terms and conditions of supervised release must impose "no greater deprivation of liberty than is reasonably necessary." *United States v. Albertson*, 645 F.3d 191, 197 (3d Cir. 2011) (quoting *United States v. Pruden*, 398 F.3d 241, 248 (3d Cir. 2005)) (internal quotation marks omitted). In deciding whether supervised release "is overbroad," this Court considers (1) "the scope of the condition, . . . with respect to substantive breadth," (2) the "duration" of the supervised release condition, (3) "'the severity of the defendant's criminal conduct and the facts underlying the conviction,'" and, if applicable, (4) "the proportion of a supervised release restriction to the total period

9

of restriction." *Id.* at 198 (quoting *United States v. Miller*, 594 F.3d 172, 187 (3d Cir. 2010)).

Underwood first asserts that imposition of a lifetime term of supervised release was plain error. First, as to factors one and two, Underwood contends that his "term could not have been broader or longer." (Appellant Br. at 27.) Regarding the third factor, Underwood contends that his term of supervised release was disproportionate to his crime, because although his crime was serious, it was not violent and it involved no actual contact with a minor. He also emphasizes that he was immature at the time of his offense, and that he intends to better his life upon release from prison. Regarding the fourth factor, Underwood argues that the lifetime term of supervision is completely disproportionate to the total period of restriction.

Underwood's statutory term of supervised release was five years to life. *See* 18 U.S.C. § 3583(k). The Sentencing Guidelines provide in a policy statement that ". . . the statutory maximum term of [lifetime] supervised release is recommended" for those individuals convicted of a sex offense. U.S.S.G. § 5D1.2(b)(2) (policy statement); *see* U.S.S.G. § 5D1.2 cmt. n.1. The District Court explained that it imposed a lifetime term of supervised release due to the disturbing nature of the videos on Underwood's computer; his interest in both child and adult pornography; his lack of a social network outside of Mr. Ross, a convicted sex offender; and his need for treatment as explained in Underwood's forensic evaluation. Moreover, the District Court noted Underwood's "addictive personality" and refusal to conform his actions to the law evidenced by repeated use of illegal drugs while released on bail. (A. 85). The District Court noted the

10

opportunity for Underwood to come back before the Court and petition for a reduction in the duration of his supervised release if his behavior indicates supervision is no longer necessary.

The District Court's statement reflects a careful assessment of the pertinent factors. A lifetime term of supervised release is reasonable in view of the nature of Underwood's crime, his acknowledged interest in child pornography, the nature of the materials he possessed, his addictive traits, and the pertinent policy statement recommending the maximum period of supervised release for this type of offense. *See United States v. Cope,* 527 F.3d 944, 952 (9th Cir. 2008). Accordingly, the District Court did not commit plain error in imposing a lifetime term of supervised release.

Next, Underwood argues that the District Court plainly erred by imposing a five-year ban on internet access. This Court has recognized that "a complete ban on the use of a computer and internet will rarely be sufficiently tailored to the § 3553(a) factors," even in child pornography cases. *Albertson*, 645 F.3d at 197 (finding that a twenty year ban on internet access where the defendant downloaded over 700 images of child pornography and allegedly molested his wife's teenage daughter was overly broad because Albertson did not use the internet to actively communicate with or to solicit sexual contact with children.) Although "a complete ban on internet access . . . may be permissibly imposed temporarily on those offenders who have used or have clearly demonstrated a willingness to use the internet as a direct instrument of physical harm," Underwood did not communicate or solicit sexual contact with minors via the internet. *Id.* at 197.

11

Accordingly, Underwood argues that the District Court should have "consider[ed] whether a tailored internet limitation [was] feasible." *Id.* at 198.

Sentencing courts may impose special conditions of supervised release, so long as those conditions are "'reasonably related to the factors set forth in § 3553(a)'" and "'involve no greater deprivation of liberty than is reasonably necessary' to deter future crime, protect the public, and rehabilitate the defendant." *United States v. Thielemann,* 575 F.3d 265, 272 (3d Cir. 2009) (quoting 18 U.S.C. § 3583(d)(1)-(2)). The Government contends that the Court did not ban Underwood from internet use, but merely imposed a limited computer monitoring restriction. The Government reasons that, although the District Court initially used the word "ban" when referring to Underwood's internet access, its remaining discussion of the internet limitation referred to it as a restriction. The District Court made clear that it contemplated the restriction to be far less onerous than a total ban. The Court explained that a "5-year limitation on the use of the internet" was a "reasonable range of time," and it was being imposed due to the possession of the pedophile "tutorial" and evolving interest from adult pornography to child pornography. (A. 89.)

The actual language used in formally imposing the sentence supports the conclusion that the District Court intended to establish an internet monitoring restriction, not a total ban. The District Court stated:

> You shall submit to an initial inspection by the U.S. Probation Office, and to any unannounced examination during supervision of your computer equipment for a period of five years. This includes, but is not limited to, personal computers, personal digital assistants, entertainment consoles, cellular

telephones and/or electronic media devices which [are] owned or accessed by you. You shall allow the installation on your computer of any hardware or software [systems] which monitors computer use. You shall pay the cost of the computer monitoring program. You shall abide by the standard conditions of computer monitoring. Any dispute as to the applicability of this condition shall be decided by the court.

(A. 93-94.)

It is thus evident that the District Court did not intend to impose a complete ban on use of the internet for a period of five years. Moreover, Underwood does not challenge the restrictions on computer use imposed in the formal pronouncement of his sentence. Accordingly, Underwood is not entitled to relief on this ground.

## III.

For the foregoing reasons, we will affirm the District Court's judgment.